JAMES H. KENNEDY, JUNIOR, vs. CONSOLIDATED MOTOR
LINES, INCORPORATED,

Worcester.    April 9, 1942. — July 22, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Jurisdiction*, Motor vehicle case. *Motor Vehicle*, Operation. *Superior Court*, Jurisdiction. *District Court*, Jurisdiction.

Section 19 of G. L. (Ter. Ed.) c. 218, as amended by St. 1934, c. 387, § 1, giving District Courts exclusive original jurisdiction of actions of tort arising out of the operation of motor vehicles, applies to such operation on private ways as well as on public ways.

Under G. L. (Ter. Ed.) c. 218, § 19, as amended by St. 1934, c. 387, § 1, the Superior Court had no jurisdiction of an action of tort, begun there, for personal injuries sustained when, as a barrel was being hauled up a chute by a rope attached to a motor vehicle which had come there to take the barrel away, the rope broke and the plaintiff was struck by the descending barrel.

TORT.    Writ in the Superior Court dated November 6, 1940.

The case was heard by *Leary*, J.

*S. Perman*, for the defendant.

*F. Hurtubis, Jr.*, for the plaintiff.

DOLAN, J.    This is an action of tort to recover compensation for personal injuries sustained by the plaintiff in the circumstances hereinafter described.    The judge, sitting without a jury, found for the plaintiff and the case comes before us on the defendant's exceptions to the denial by the judge of three requests for rulings.

Material facts disclosed by the evidence follow: The accident happened in New London, Connecticut, on February 26, 1940, while the plaintiff was on the premises of a department store in which he was employed as an assistant manager.    Shipments of merchandise to the store were received by way of a freight chute which ran from a bulkhead at the first floor level to the basement of the store.    The chute was about eight feet wide and was "composed

of two metal tracks with a small pair of steps between them and as you place a carton on the chute, it comes down like a waterfall and gains speed and the carton slides into the open space of the receiving room." On the morning of the day above mentioned, cartons of merchandise came down the chute and "landed hit or miss." There were about one hundred cartons of different sizes and weights in and around the chute. The basement was in a congested condition. About a week before, the defendant had delivered two barrels of flour to the store by mistake. About 5 P.M. on the day the accident occurred the defendant's truck driver came in to remove them. The manager of the store told the plaintiff "to go down to assist in getting the . . . barrels . . . out of the stockroom as the space was needed." The plaintiff went with the driver to the basement. Each "upended" a barrel and rolled it to the foot of the chute. They started to push one of the barrels up the chute but could not. Each barrel of flour weighed two hundred twenty-five pounds.

The driver left the basement and "in about a minute he called down through the open hatchway that there was a car at the entrance of the chute which would have to be removed." This vehicle had been parked there by the manager. The plaintiff obtained the keys of the automobile from him, and moved it to the side of the parking lot. Returning to the basement he found that "the barrel lay just as it had been when . . . left there a few minutes before except now there was a 'small, dark, used-looking rope attached to it running in a slackened condition up to the mouth of the . . . chute.'" The plaintiff did not know where the driver was, and was awaiting his signal "to hoist." The plaintiff started to stack and push the cartons to one side. He noticed the rope become taut. The barrel "started slowly to move along," but there were several cartons still in the way of the barrel "overhanging at each side." As he was "moving and still stacking them out of the path . . . [he] heard a loud, resounding crack." He looked up and saw the "barrel become unloosened or the rope break, the barrel twisted around and started down

the . . . chute right at . . . [him]." The barrel was then about eight feet above him and fifteen feet "away." He "twisted and turned and tried to get over the cartons that were stacked helter skelter, but he was wedged in." The barrel "crashed into the side of his left leg and he was thrown over a stack of these cartons where he lay unconscious for several minutes."

In cross-examination the plaintiff testified that he and the driver tied the rope to the barrel and to the truck and that the driver drove slowly out of the yard.

In answer to interrogatories propounded by the plaintiff, the defendant's secretary and treasurer stated that he had been "informed" as follows: that the rope used was known as a "tailgate" rope which was used for the purposes of tying in loads on a truck; that the rope was fastened by the operator of the truck; that the operator tied one end of the rope around the barrel using what is known as a "barrel hitch"; that the truck was then turned around so as to face the bulkhead and the barrel was raised by the backing of the truck slowly; that when the operator saw part of the barrel appear at the top of the chute, he stopped the truck and as he was coming out of the cab of the truck "he observed the rope to break and the barrel fall."

In answer to interrogatories propounded by the defendant the plaintiff stated, in substance, that he did not know in what respect the rope was "defective, unfit or of unsuitable material," as alleged in his declaration, that he did not handle it; and that he did not know in what respect the "rope or appliance was negligently or improperly fastened to" the barrel, as alleged in the second count of his declaration. All he knew was that "the rope or appliance broke or gave way or became unfastened" and that the barrel came down into the basement.

A photograph of the chute showing its point of entrance to the premises was an exhibit at the trial and is before us. At the base of the opening there appears to be a stone curb which is broken and jagged in some places.

The defendant's fourth request for a ruling was as follows: "If the plaintiff received his injuries as a result of the

operation of a motor vehicle . . . [the] court has no jurisdiction over the subject matter and the plaintiff cannot recover in this action." The judge denied this request as not being applicable to the facts found, and in connection therewith made the following finding: "The court finds that the plaintiff did not receive injuries as a result of the operation of a moving vehicle."

The present action was brought originally in the Superior Court. General Laws (Ter. Ed.) c. 218, § 19, as amended by St. 1934, c. 387, § 1, provides that "District courts shall have exclusive original jurisdiction of actions of tort arising out of the operation of a motor vehicle," and under § 102A, inserted in G. L. (Ter. Ed.) c. 231 by St. 1934, c. 387, § 3, the party bringing an action so arising in the District Court may remove the action to the Superior Court as therein provided. While it does not clearly appear whether the defendant's truck was on a public way or on private land at the time of the accident, the rule is the same in either case. *Couto* v. *Trustees of New York, New Haven & Hartford Railroad, ante,* 23, 24–25. General Laws (Ter. Ed.) c. 218, § 19, as amended, was enacted for the purpose of reducing the number of cases that were being brought in the Superior Court, and thus to "permit the more expeditious dispatch of business by that court." *Blair* v. *Boston Elevated Railway,* 310 Mass. 1, 3–4.[1] On the other hand, G. L. (Ter. Ed.) c. 90, dealing with registration and insurance of motor vehicles, has for its purpose the protection of travellers upon the public way, *Dudley* v. *Northampton Street Railway,* 202 Mass. 443; *Santa Maria* v. *Trotto,* 297 Mass. 442, 445, and in keeping with that purpose applies only to vehicles upon a public way. We cannot read into G. L. (Ter. Ed.) c. 218, § 19, as amended, restrictions upon its scope. We must interpret the statute as it was written. *Attorney General* v. *J. P. Cox Advertising Agency, Inc.* 298 Mass. 383, 387, 388, and cases cited. Thus interpreted it applies to all actions of tort arising out of the operation of

---

[1] See Reports of Judicial Council, 1932, 1933, 1934; 4 Mass. Pub. Doc. (1932) No. 144, 18–21; 4 Mass. Pub. Doc. (1933) No. 144, 19–20; 5 Mass. Pub. Doc. (1934) No. 144, 8.

a motor vehicle, without regard to the place where the accident occurs. *Couto* v. *Trustees of New York, New Haven & Hartford Railroad, ante,* 23.

With respect to the denial of the requested ruling under discussion, the sole question is whether in the present case the action arose out of the operation of the defendant's motor vehicle. The defendant had delivered the barrel of flour involved to the store, and at the time of the accident the operator of the truck was engaged in removing and transporting it away. " ' Transportation implies the taking up of persons or property at some point and putting them down at another.' *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 203," *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150, 155, and cases cited, and "It is settled law in this Commonwealth that a driver continues to operate a . . . [motor vehicle] on the highway during the time it is stopped in the ordinary course of its operation for soliciting trade or in calling for and delivering merchandise." *Cook* v. *Crowell,* 273 Mass. 356, 358. *Blair* v. *Boston Elevated Railway,* 310 Mass. 1. *Stroud* v. *Water Commissioners,* 90 Conn. 412, 414. *State* v. *District Court,* 110 Mont. 250, and cases cited. We think that this principle applies on private ways as well. The defendant's operator was engaged in receiving the barrel in question when the accident happened. Its receipt for transportation of necessity included loading the barrel on the truck, and was incidental to the operation of the truck. *Blair* v. *Boston Elevated Railway,* 310 Mass. 1, 3. *Rozzi* v. *Caggiano,* 310 Mass. 752. See *Liberty Mutual Ins. Co.* v. *McDonald,* 97 Fed. (2d) 497, 498–499; *Maryland Casualty Co.* v. *Cassetty,* 119 Fed. (2d) 602, 604; *Zatkin* v. *Katz,* 126 Conn. 445, 450. The rope was attached to the barrel and to the truck. It was being raised in the process of loading by the operation of the truck through motive power of its engine. It is immaterial that the operator had stopped the truck and was "coming out of the cab" when the rope broke and the barrel fell and struck the plaintiff. The plaintiff and the defendant's driver had been unable to push the barrel up the chute. It was necessary to put the truck in operation to load the barrel and that

was done, and the barrel fell in the process of loading. In these circumstances we are of opinion that it must be held that the accident arose out of the operation of the defendant's truck. See *Wheeler* v. *London Guarantee & Accident Co.* 292 Penn. St. 156. The case of *Caron* v. *American Motorists Ins. Co.* 277 Mass. 156, is distinguishable on the facts.

It follows that the defendant's fourth request for a ruling that the Superior Court had no jurisdiction of the present action was erroneously denied. Since the Superior Court did not have jurisdiction of the action, it was the duty of the judge to order the action dismissed with costs to the defendant. See *Carroll* v. *Berger,* 255 Mass. 132, 134. It is unnecessary to state or discuss the defendant's other exceptions.

> *Exceptions sustained.*
> *Action dismissed with costs to*
> *the defendant.*