## 20000

Ralph C. TRUESDALE and Bertha Truesdale as Administratrix of the Estate of Kimberly Ann Truesdale, Respondents, v. SOUTH CAROLINA HIGHWAY DEPARTMENT, Appellant.

(213 S. E. (2d) 740)

222

*Messrs. Daniel R. McLeod, Atty. Gen., Donald V. Myers, and Hardwick Stuart, Jr., Asst. Attys. Gen.,* of Columbia *for Appellant,*

224

*Messrs. Holland, Furman & Tetterton,* of Camden, *for Respondents,*

*Messrs. Daniel R. McLeod, Atty. Gen., Donald V. Myers, and Hardwick Stuart, Jr., Asst. Attys. Gen.,* of Columbia, *for Appellant, in Reply.*

April 16, 1975.

BUSSEY, Justice:

This wrongful death action was brought by respondents as the personal representatives of Kimberly Ann Truesdale against one Sara Lynn Young and against the South Carolina Highway Department, the appellant herein, the action against the Highway Department being controlled by the "South Carolina Governmental Motor Vehicle Tort Claims Act" [1968 (55) 3027] codified as sections 10-2621 through 10-2625 in the 1973 Cumulative Supplement to the 1962 Code of Laws.

The plaintiffs sought damages in the total amount of $35,000. Prior to the trial plaintiffs executed a covenant not to sue Miss Young for a consideration of $6,000. Over the objections of the appellant Highway Department the trial judge allowed an amendment to the complaint eliminating Miss Young as a party defendant and seeking judgment against the department alone in the sum of $35,000. The jury returned a verdict for the respondents in the full amount of $35,000, which the trial judge reduced to the statutory limit of $10,000, under section 10-2623, after first offsetting the amount obtained for the covenant not to sue ($6,000) against the total verdict of $35,000. Since appellant contends, *inter alia,* that it was entitled to a directed verdict in its favor, it follows that the evidence and all the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the respondents and we accordingly state the facts of the case in the light of such principle.

On November 11, 1971, Kimberly Ann Truesdale, the nine year old daughter of the respondents was fatally injured when struck by a vehicle driven by Miss Young who was travelling south along South Carolina highway S-28-88

in the county of Kershaw at a point about six miles south of the city of Kershaw. The accident occurred shortly after 4:00 p. m. On said date the department was engaged in doing certain grading repair work on the shoulders of the road in the vicinity of the accident. Shortly before the accident a motor grader working on the west shoulder and headed south had a flat tire. Some distance north of the motor grader, department employees James and Roach, with a pickup truck, were engaged in cleaning out the end of a pipe or culvert, James being the operator of the truck. These two were summoned by Murphy, the driver of the grader, to assist in removing the flat tire therefrom which had to be removed and taken to the shop before Murphy could quit work for the day, it then being about quitting time. James drove the pickup truck to the location of the grader and parked the same at least partially on the paved portion of the highway alongside, but somewhat to the rear of the grader. Still another department dump truck came upon the scene and parked to the rear of the grader, but at a right angle to and off of the paved road headed toward a field to the west of the highway. Such was the situation of the several vehicles of the department at the moment of the fatality and there was nothing to prevent the truck driven by James from having been parked completely off of the pavement had the driver thereof been so minded.

Several children, including the Truesdale child, were playing in an area to the west of the highway in the vicinity of the motor grader, which fact was known to the employees of the Highway Department. The Truesdale child pursued a puppy across the highway in front of the department truck parked thereupon and was struck by the Young automobile while at least partially in Miss Young's left-hand lane. The location of the several department vehicles completely obstructed the views of both Miss Young and the deceased child of each other until just a moment before impact. There was no flagman or sign of any kind upon the scene.

The liability of the Highway Department, if any, is predicated solely upon the alleged negligent and unlawful parking of the truck, operated by James, upon the paved highway. A primary contention of the appellant is that the truck was not in operation but parked at the time of the fatality and thus the infant was not fatally injured by the "negligent operation" of a motor vehicle within the intent and meaning of section 10-2623. Said section in pertinent part reads as follows:

"Any person sustaining an injury by reason of the negligent operation of any motor vehicle while being operated by an employee of a governmental entity while in and about the official business of such governmental entity may recover in an action against such governmental entity such actual damages as he may sustain; . . ."

It is argued and contended that since this code section, being in derogation of sovereign immunity, has to be strictly construed, the phrase "while being operated" restricts liability of a governmental entity to only those cases where damage and injury results from negligent operation that takes place during the time the mechanism of a motor vehicle is actually engaged and the vehicle is actually in motion as a result thereof.

It is true that the decisions of this Court have uniformly stated, if not held, that statutes waiving the State's immunity from suit, being in derogation of sovereignty, must be strictly construed. The Court has been just as consistent, however, in pointing out that this is only one rule of construction and that it is subservient to the cardinal rule of construction that the legislative intent must prevail if it can be reasonably discovered in the language used, which must be construed in the light of the intended purpose. Stated differently, this rule of strict construction is subject to the principle that all rules of statutory construction are merely for the purpose of ascertaining the legislative intent as expressed in the statute. Accordingly,

a statute in derogation of sovereignty is never to be so strictly construed as to defeat the legislative intent. The act, as a whole, must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policies of the law makers and must be construed in the light of the evil which it seeks to remedy and in the light of conditions pertaining at the time of its enactment. See numerous cases cited in West's South Carolina Digest, Statutes, Key Nos. 181, 184, 236 and 237.

It has been said that Lord Coke's language on the subject of interpretation of statutes (*Heydon's* Case 3 Co. Rep. 72, 76 Engl. Repr. 637, 1584) is difficult to improve upon even with the passage of much time:

" . . . for the full and true interpretation of all statutes in general (be they penal or beneficial, restrictive or enlarging of the common law) four things are to be discerned and considered: 1st. What was the common law before the making of the act? 2nd. What was the mischief and defect for which the common law did not provide? 3rd. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth? And 4th. The true reason of the remedy. And then the office of all the judges is always to make such construction as shall suppress subtle invention and evasions for continuance of the mischief . . . and to add force and life to the cure and remedy, according to the true intent of the makers of the act . . ."

It is not at all amiss to call attention to the title of the tort claims act which commences with the following language:

"An act to provide for causes of action against the State of South Carolina, its counties and municipalities for damage due to the negligence of their agents and employees in the operation of motor vehicles; * * *."

When the act is read as a whole it seems obvious that the legislature intended, with one exception not now per-

tinent, to make the various governmental entities of the State uniformly liable for actual damages resulting from the negligent operation of motor vehicles when such negligence was that of an employee while in and about the official business of such governmental entity and to provide for a uniform extent of recovery equal to that which could be recovered under the minimum limits of automobile liability insurance carried upon other motor vehicles upon the highway.

The act is clearly remedial in nature and intended to give a minimum amount of protection to those persons who have sustained damage and injury as a result of the negligent operation of a motor vehicle by an employee of any governmental entity while about the business of such entity.

We are of the view that the extremely strict construction urged by the appellant would defeat the intent and purpose of the General Assembly. We think the phrase "while being operated by an employee, etc." was intended only to restrict liability to cases where operation of the vehicle was by an employee of such governmental entity, who was at the time of such operation in and about the business of such governmental entity. To hold that such phrase limits recovery to only those cases where the mechanism of the motor vehicle is actually engaged and the vehicle in motion would mean, for instance, that an employee of a governmental entity, while about the business of the employer, could run through a stop sign, ever so recklessly but bring the vehicle to a complete stop before being struck by a carefully operated automobile having the right-of-way, and the governmental entity be relieved of any liability for the negligent operation of the vehicle perforce the circumstance that its employee was able to bring the vehicle to a stop prior to impact.

In the instant case it is irrefutable that the stopping or parking of the motor vehicle was part and parcel of the operation thereof just as was stopping a vehicle in an inter-

section in the hypothetical illustration just given. Unquestionably the vehicle was being operated when it was being stopped and stopping it where it was stopped is the very act alleged and proved to be a proximate cause of the fatality.

Prior to the adoption of the Motor Vehicle Tort Claims Act the liability of the Highway Department for the negligent operation of a motor vehicle was governed by section 33-229 of the Code which in pertinent part reads as follows:

"Any person who may suffer injury to his person or damage to his property by reason of * * * (c) the negligent operation of any vehicle or motor vehicle in charge of the State Highway Department while such vehicle or motor vehicle is actually engaged in the construction or repair of any of such highways or while otherwise being operated on official business of the Department may bring suit against the Department * * *."

In 1961, seven years prior to the adoption of the act here controlling, *Deese v. Williams,* 237 S. C. 560, 118 S. E. (2d) 330, was decided under the provisions of section 33-229. In that case there was a dispute about whether the department truck was standing or moving very slowly at the time of the collision, but the Court in deciding the issues assumed the truth of the testimony that the truck was in fact standing still. The verdict for the plaintiff was upheld, which could not have been done in the absence of the Court concluding that the damage resulted from the negligent *operation of a vehicle* of the department, which vehicle, at the moment of impact, was standing still, just as in the instant case. We quote the following pertinent language from the opinion,

"It is argued, however, that the real negligence, if any, of appellant concerned not the operation of the truck but the failure to provide adequate warning, which appellant says is not included under Section 33-229. This contention

overlooks the fact that the blocking of the highway by the truck gave rise to the duty to provide adequate warning and the discharge of this duty was directly connected with the operation of the truck."

The General Assembly is presumed to have been fully aware of the decision in *Deese* and if it had intended to exempt governmental entities from liability in cases where the motor vehicle was perchance stopped at the moment of injury, however negligently operated prior to stopping, it would have been very simple to state that there would be no liability if the vehicle was not in motion at the moment of impact.

If there be need to resort to the decisions of other courts for persuasive authority the Connecticut case of *Stroud v. Board of Water Commissioners of City of Hartford,* 90 Conn. 412, 97 A. 336 (1916) is a case construing statutory language in part quite similar to our statute. We quote therefrom the following:

"The remaining question is whether the injury complained of was 'received by reason of the operation of said motor vehicle in or upon the public highways of this state.' We think it was. The word 'operation' cannot be limited, as the plaintiff claims it should be, to a state of motion controlled by the mechanism of the car. It is *self-evident that an injury may be received after the operator has brought his car to a stop, and may yet be received by reason of its operation. The word 'operation,' therefore, must include such stops as motor vehicles ordinarily make in the course of their operation."* (Emphasis added.)

For other decisions of the same import and effect, see the Massachusetts case of *Kennedy v. Consolidated Motor Lines, Inc.,* 312 Mass. 84, 43 N. E. (2d) 121, and cases therein cited.

It is urged by the department that the court erred in holding as a matter of law that it was not exempt, by virtue

of code section 46-290, from the parking provisions of code section 46-481 and other provisions of the Uniform Act Regulating Traffic. In brief, section 46-290 provides that the Uniform Act Regulating Traffic shall apply to vehicles owned and operated by entities such as the Highway Department except as therein provided, it being specifically provided that such act should not apply to "persons * * * motor vehicles and other equipment while actually engaged in work upon the surface of a highway, but shall apply to such persons and vehicles when travelling to and from work." Under the facts of this case we are of the view that neither the driver nor the truck itself was "actually engaged in work upon the surface of a highway" within the meaning and intent of the exemption contained in section 46-290.

We apparently have not had occasion heretofore to construe this precise statutory language, but the Supreme Court of New Mexico in the case of *Sturgeon v. Clark,* 69 N. Mex. 132, 364 P. (2d) 757, had occasion to consider the identical statutory language. It was there held, *inter alia,* that such an exemption, like all other exemption statutes should be strictly construed against the person claiming the exemption and that the right of a defendant to the benefits of the exemption must be clear and unmistakable. In that case, at the time of the accident, the driver of the car was proceeding from work at one point to work at another point on the highway when the accident occurred, a situation quite similar to the factual situation here in that neither the vehicle nor the driver thereof was performing any work upon the surface of the highway at the time or point of the accident.

We quote the following language from the opinion in that case, which we regard as sound construction.

"We are clear that the legislature incorporated § 64-15-4(b), N. M. S. A. 1953, into the statute in recognition of the fact that in constructing, repairing and maintaining highways there are circumstances under which men and

equipment must be present on the surface of the highway without being held to comply with the rules of the road generally binding. However, while providing for performing necessary work without being in violation of statutes otherwise applicable, they were careful to restrict the exemption to situations where actual work was being performed on the surface."

In the instant case stopping the truck where it was stopped was neither necessary nor incidental to the performance of any work upon the surface of the highway and hence not within the intent or purpose of the exemption provision.

The department argues that the evidence conclusively shows that the Truesdale child, aged nine, was capable of contributory negligence and that she was as a matter of law guilty of contributory negligence thus entitling it to a directed verdict or judgment *non obstante veredicto*. It is urged that it was likewise entitled because of the contributory negligence of the parents. We dispose of these contentions merely by saying that the record abundantly supports the submission of these issues to the jury by the trial judge and there is no merit in the exceptions raising these issues.

Failing in its plea of contributory negligence, the department asserts that the sole proximate cause of the fatality was the negligence of Miss Young or that in any event the negligent parking of its truck was not the proximate cause of the fatality. Cited are numerous cases wherein the negligent parking of a vehcle, under the facts of those cases, has been held to be not the proximate cause of an accident. Among the cases relied upon is *Locklear v. Southeastern Stages*, 193 S. C. 309, 8 S. E. (2d) 321 (1940). While the unlawful parking in that case was held not to be the proximate cause of that particular event, the Court aptly and correctly set forth the principle of law for determining the issue of proximate cause in such a case in the following language,

"The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances."

In the instant case with the view of on-coming travelers already substantially obstructed by other department vehicles lawfully parked upon the shoulder of the highway and with children obviously playing in the immediate vincinity, we think it entirely reasonable, or at least the jury could so conclude, that it was readily foreseeable that some serious accident would likely result from parking another highway truck upon the highway under the existing circumstances. In brief, the issue of proximate cause was clearly one for the jury under the evidence in this case.

Finally, it is argued that the trial judge erred in submitting to the jury plaintiff's prayer for damages in the amount of $35,000 instead of restricting such prayer to the statutory limitation of liability, to wit: $10,000. It is argued that any judgment against the department should have been restricted to the statutory limit of $10,000 and against such should have been credited the consideration for the covenant not to sue, to wit: $6,000, thus resulting in a maximum liability to the department of only $4,000. The contentions of the department are, we think, completely unsound.

In *Powers v. Temple,* 250 S. C. 149, 156 S. E. (2d) 759 (1967) we noted that the rule was almost universally followed that one tort feasor is entitled to credit for the amount paid by another tort feasor for a covenant not to sue, pointing out that there was considerable conflict as to the proper manner of allowing such a credit. We stated our conviction that the sound and preferable method was for evidence thereabout to be excluded from the consideration of the jury and

credit to be given by the court. The reason for allowing such a credit is to prevent an injured person from obtaining a second recovery of that part of the amount of damages sustained which has already been paid to him. 140 A. L. R. 931, 934. Or differently stated, it is almost universally held that there can be only one satisfaction for an injury or wrong.

While normally there is no reason for submitting to a jury the extent of damages which perchance exceed a statutory limit of liability, in the absence of it being determined what the full measure of damages is, it cannot be determined whether a joint feasor is or not entitled to an offset of the consideration for a covenant not to sue. Considerable colloquy was engaged in between the trial judge and counsel as to the proper method of submitting the case to the jury so as to fully protect the rights of both parties as to the covenant not to sue, in the course of which the trial judge commented to counsel for appellant "I don't think you can have your cake and eat it too." We agree.

Under the circumstances of this case we do not know how His Honor could have better protected the rights of both parties. The jury has found the full measure of damages to be the sum of $35,000 and it is not even suggested that there was any error in that finding. Such verdict was, by the trial judge, first reduced to the sum of $29,000 by virtue of the covenant not to sue and then further reduced to $10,000, the statutory limit of liability of the department, thus leaving the respondents with the sum of $19,000, uncollectible damages. Since the purpose of allowing an offset or credit for the consideration of a covenant not to sue is to prevent double recovery the department in the present case would have been entitled to *pro tanto* relief if, but only if, the total damages had been found to be something less than $16,000.

We deem all the appellant's exceptions to be without merit and the judgment below is,

Affirmed. [1]

LEWIS and BRAILSFORD, JJ., concur.

Moss, C. J., and LITTLEJOHN, J., dissent.

Moss, Chief Justice (dissenting) :

I am not in accord with the majority opinion in this case and feel compelled to dissent.

This wrongful death action was instituted by Ralph C. Truesdale and Bertha Truesdale, as administrators of the estate of Kimberly Ann Truesdale, the respondents herein, against the South Carolina Highway Department, the appellant herein, and one Sara Lynn Young. The respondents allege that on November 11, 1971, Kimberly Ann Truesdale, their nine year old daughter, was fatally injured as she was crossing a state highway in front of a truck of the appellant which was unlawfully parked in the traveled portion of the highway. They further allege that her injuries and death were the result of the acts and delicts or negligence on the part of the appellant in that its truck was unlawfully parked so as to block the view of the deceased and that of Sara Lynn Young, a motorist traveling along the highway, whose automobile struck the deceased as it was passing the parked truck of the appellant.

It is significant to note that the only allegation of negligence by the respondents against the appellant was unlawful parking. The first amended complaint of the respondents did, however, contain allegations that the action was being

---

1. In view of the dissenting opinion we point out that the record reflects that the trial judge struck from the complaint reference to the code sections pursuant to which the action was brought, not because they were inapplicable but because he deemed such "a matter of law" which in his view had no place in the complaint. The record and the appeal indicate that the trial judge and all counsel fully realized that this action and the trial thereof were controlled by the provisions of the of the "South Carolina Governmental Motor Vehicle Tort Claims Act."

brought against the appellant by and under Sections 10-2623 and 10-2624 of the Code, as amended. The appellant in answering the respondents' complaint alleged as its sixth defense the following:

"That at the time of the accident referred to in the Complaint the truck owned by the Defendant South Carolina Highway Department was not in operation, but parked (as alleged in the Complaint), and thus the infant was not injured by the 'negligent operation' of a motor vehicle owned by the State of South Carolina as required by Section 10-2623, Code of Laws of South Carolina, as amended, in order to waive the sovereign immunity of the State of South Carolina;".

At the trial of this case, during the 1973 February Term of the Court of Common Pleas for Kershaw County, before the Honorable Dan F. Laney, Jr., Presiding Judge, it was announced that a covenant not to sue had been entered into between the plaintiffs and the defendant, Sara Lynn Young. Thereafter, the pleadings were amended so as to eliminate Sara Lynn Young as a defendant, and the cause proceeded to trial against the State Highway Department. During the course of the trial, the trial judge ruled as a matter of law, over the objection of the appellant, that defense number six, above quoted, should be stricken from the answer. As a result of this ruling, the respondents were also allowed to amend their first complaint and did so by striking the assertion that the action was being brought under Sections 10-2623 and 10-2624 of the Code, as amended.

It thus becomes apparent to me that the case went to trial on the basis of the alleged negligent acts and delicts of the appellant by the unlawful parking of its truck, and not under the "South Carolina Governmental Motor Vehicle Tort Claims Act," which is codified as Sections 10-2621 through 10-2625, in the 1973 Cumulative Supplement to the 1962 Code of Laws.

The trial of this case resulted in a verdict for the respondents for actual damages. This appeal followed. One of the questions presented is whether the trial judge was in error in striking defense number six from the answer of the State Highway Department and in holding as a matter of law that parking was "operation" within the coverage of Section 10-2623 of the Code, as amended.

The South Carolina Highway Department is an agency of this State and is entitled to immunity as a sovereign body within the State. It is settled law that the State can be used only in the manner and upon the terms and conditions prescribed by statute, and such statutes waiving the State's immunity from suit, being in derogation of sovereignty, must be strictly construed. *Harrison v. S. C. Tax Commission,* 261 S. C. 302, 199 S. E. (2d) 763. This case cited with approval the following statement from *Brazell v. City of Camden,* 238 S. C. 580, 121 S. E. (2d) 221:

"(T)he Courts have refused to hold that the sovereign immunity has been abrogated, abridged, or surrendered, except under plain and positive provisions of the statute."

In order for the respondents to bring an action against the appellant, it would be necessary that such be brought pursuant to the terms and conditions of a statute in which immunity has been waived. The appellant urges that because the respondents have bottomed their right to a recovery for the unlawful parking of its truck such could not be negligent operation thereof within the purview of the South Carolina Government Motor Vehicle Tort Claims Act. It is further contended that the trial judge erred in holding as a matter of law that parking was operation within the meaning of Sections 10-2623 and 10-2624 of the Code, as amended. Attention is again directed to the motion, which the trial judge granted, striking out from the pleadings the applicability of the aforesaid sections of the Code.

The only delict charged against the appellant is that its truck "was unlawfully parked". It is true that a standing or

stopped vehicle, if its mechanism is being engaged, may come within the provisions of the aforesaid statutes. However, it seems illogical to conclude that the General Assembly intended liability on the part of the appellant for vehicles which have been parked, the working mechanism thereof disengaged and not functioning in any manner, and the driver indefinitely absent therefrom.

In the majority opinion reliance is placed on the case of *Deese v. Williams,* 237 S. C. 560, 118 S. E. (2d) 330. There was a dispute in that case as to whether the truck was standing or moving very slowly at the time of the collision. Recovery was permitted against the appellant under the then Section 33-229(c) of the Code, which had reference to the negligent operation of a vehicle in the charge of the appellant while such was actually engaged in the construction or repair of any highway. The conclusion was there reached that the truck was actually engaged in the repair of the highway.

The General Assembly, by Act No. 1273, 55 Stats. 3027, approved June 10, 1968, enacted the "South Carolina Governmental Motor Vehicle Tort Claims Act" and by the terms thereof, amended Section 33-229 of the 1962 Code, so as to delete therefrom a suit for negligent operation of a motor vehicle in charge of the appellant. However, under Section 3 of such Act, now Section 10-2623, 1974 Cumulative Supplement, recovery is allowed to "any person sustaining an injury by reason of the negligent operation of any motor vehicle while being operated by an emeployee of a governmental entity . . . ."

It is apparent to me that the recovery allowed in the *Deese* case was pursuant to Section 33-229(c) of the Code because of the negligent operation of a motor vehicle in charge of the appellant while such vehicle was actually engaged in the repair of a highway. The record in the *Deese* case reveals that the truck of the appellant was upon the surface of the highway, either moving slowly or standing still, with the mechanism thereof functioning and the opera-

tor at the wheel. The respondents, if entitled to recover damages under the factual situation here revealed, would have to prove that the injury and death of their intestate resulted from "the negligent operation of any motor vehicle while being operated by an employee" of the appellant. Section 10-2623 of the Code.

In my opinion, the immunity of the State from suit under Section 10-2623 of the Code, as amended, is waived only when a motor vehicle caused injury or death "while being operated". Where the language of the statute is clear and concise, full significance must be accorded its expressed terms. The explicit terms of this statute clearly limit recovery to only such negligent operation that takes place during the time that the mechanism of a vehicle is being made to function. It follows that the phrase "while being operated" cannot apply to a parked vehicle.

From 60 C. J. S. Motor Vehicles § 6(2), at page 160, we quote the following:

"Ordinarily the word 'operation,' when used in relation to motor vehicles, refers to the physical act of working the mechanism of the vehicle; the actual physical driving and handling of the motor vehicle; the manipulation of the controls of a car in order to move it as a vehicle; but it is not limited to the movement of the car alone, and includes such stops as motor vehicles ordinarily make in the course of their operation."

It is my conclusion that the respondents are not entitled to recover damages under Section 10-2623 of the Code, as amended, because this statute does not apply to a parked vehicle.

For the foregoing reasons I think the judgment of the lower court should be reversed and the case remanded for entry of judgment in favor of the appellant.

LITTLEJOHN, J., concurs.