## 20079

Betty M. GAVIN, Respondent, v. NORTH CAROLINA MUTUAL INSURANCE COMPANY, Appellant

(217 S. E. (2d) 591)

*Messrs. F. Henderson Moore, Morris D. Rosen* and *Robert N. Rosen,* of Charleston, *for Appellant,* cite:

*Donald M. Holler, Esq.,* of Moncks Corner, *for Respondent,* cites:

August 7, 1975.

LEWIS, Justice:

This action was brought to recover actual and punitive damages for the alleged fraudulent failure of the defendant-appellant, North Carolina Mutual Life Insurance Company, to pay the face amount of an insurance policy issued on the life of Jessie M. Gavin, deceased. Plaintiff was the wife of the deceased and the named beneficiary under the policy.

As a result of solicitation by an agent of appellant, Jessie M. Gavin submitted an application to appellant for life insurance and a policy was issued on May 28, 1973, in the face amount of $1,000.00. No physical examination was required. The insured died on November 23, 1973 and a claim was filed shortly thereafter.

Appellant refused to pay the claim because of the alleged failure of the insured to disclose in his application for the insurance a preexisting illness. After the claim was filed, the respondent (beneficiary) was twice visited by agents of appellant attempting to secure from her a release of appellant's liability under the policy. She initially refused to do so but during the second visit she signed a purported release and received a check for $51.30, representing a return of the premiums paid on the policy. Shortly thereafter respondent brought this suit on the policy alleging that appellant's agent fraudulently induced her to sign the release. Appellant answered denying that the release was fraudulently obtained and further alleged that the policy was void because of the fraudulent failure of the deceased to disclose his preexisting illness when he applied for insurance.

When the case was called for trial appellant unsuccessfully moved for a continuance because of the absence of a medical witness. Subsequently, at the conclusion of the testimony, appellant moved for a directed verdict on the grounds that the evidence conclusively showed (1) that the policy of insurance was void because of the fraudulent failure of the deceased to disclose the condition of his health at the time of making the application and (2) the beneficiary had executed a valid release of all claims under the policy. The motion was denied and all issues were submitted to the jury, resulting in a verdict in respondent's favor for $948.70 actual damages and $6,500.00 punitive damages. The verdict for actual damages apparently represented the face amount of the policy less the previous return of premiums to respondent in the amount of $51.30. This appeal is from the foregoing judgment.

Original counsel for appellant died after the trial in the lower court and the filing of briefs in this appeal. Appellant's present counsel therefore participated only in oral argument, at which time they successfully moved to be allowed to file additional portions of the trial record, without which there would have been no basis for the consideration of the exceptions filed by appellants.

The exceptions on appeal charge error in the refusal of the trial judge to grant appellant's motion for a continuance and also renew appellant's contention that its motion for a directed verdict should have been granted.

Upon the call of the case for trial, appellant moved for a continuance on the ground that a doctor, a material witness, was unavailable to testify. This motion was granted at 4 p. m., on the first day of trial so that the doctor could appear the next day. He did not appear and a second motion for a continuance was made and denied. It is argued that the failure to grant the last motion was error.

A motion for a continuance because of the absence of a material witness is addressed to the discretion of the trial judge, and his ruling thereon will not be

disturbed unless it is shown that there was an abuse of discretion. *Norton v. Ewaskio,* 241 S. C. 557, 129 S. E. (2d) 517.

■ It is apparent that the testimony of the absent medical witness concerned an illness of the deceased prior to the time the insurance application was signed. There was no dispute as to the actual state of the insured's health; the testimony was undisputed that he had suffered a prior material illness which was not disclosed on the application for insurance. The crucial disputed issue was why this admitted prior illness was not disclosed in the application. Since there is no showing that the doctor could have testified to any fact other than this admitted prior illness, his failure to testify could not have prejudiced appellant. The record consequently fails to show that the denial of the motion for a continuance constituted an abuse of discretion.

■ This action was based upon the alleged fraudulent breach of the insurance contract. The rule has long been followed in this State that the breach of a contract committed with fraudulent intent, and accompanied by a fraudulent act will entail liability for punitive as well as actual damages. *Wright v. Public Savings Life Insurance Company,* 262 S. C. 285, 204 S. E. (2d) 57.

In order to sustain the verdict for actual damages it was necessary to show that the policy of insurance was in full force and effect at the time of the death of the insured. It was conceded that all premiums due on the policy had been paid and that the policy was in full force and effect at the death of the insured, with resulting liability of appellant thereunder, unless it was voided by the alleged fraudulent failure of the insured to reveal on the application for the policy a prior material illness.

The insured could not read or write and signed the application for the insurance by "touching the pen". Since the insured could not read or write, the agent filled out the application. There was testimony that the agent did not ask

the insured about any prior illness or ask any of the specific questions set forth on the application. Respondent testified that the only mention of the health of the insured was a statement by the agent: "I see your health is alright," to which the insured replied: "Yeah, our health is holding up pretty good." It is inferable that the agent filled in the answers on the application so as to show the insured in good health, with no prior illness, when, in fact, the insured had suffered a prior hospitalization about two years before which would have been revealed if inquiry had been made.

In order to void the policy on the ground of misrepresentations in the application, it was necessary for appellant to show that such misrepresentations were those of the insured and not those of appellant's own agent. Ordinarily, when an agent undertakes to fill out an application for an illiterate applicant who can not read or write, it becomes the agent's duty to make the appropriate inquires so that the information written on the application will correctly reflect the answers of the applicant.

It has been properly held that "an insurer cannot rely upon the falsity of answers in an application where such answers were inserted by an agent of the insurer engaged in preparing the application, entirely on his own motion and without the knowledge of or the direction of an inquiry to the insured, even though the insurer would not have issued the policy had truthful statements been made." 43 Am. Jur. (2d), Insurance, Section 1102. See also: *Atlantic Life Insurance Company v. Beckham,* 240 S. C. 450, 126 S. E. (2d) 342; *Marlowe v. Reserve Life Insurance Company,* 261 S. C. 23, 198 S. E. (2d) 267.

In view of the inability of the insured to read or write and the inference from the testimony that the agent of the appellant inserted the answers contained in the application without making the necessary inquiries of the insured, the trial judge properly held that the evidence

raised a jury issue as to whether the insured made fraudulent statements concerning his health.

The remaining issues concern the effect of the alleged "release" signed by the respondent, purporting to relieve appellant of all liability under the policy in consideration of the return of the premiums paid.

Although the release was not placed in evidence, the pleadings and statements in the record apparently concede that respondent signed a statement at the instigation of appellant's agents, in which she acknowledged receipt of the return of the premiums paid on the policy and purported to relieve the appellant of liability for all claims thereunder. Appellant contends that the release and return of premiums, as a matter of law, terminated all of its liabilities under the policy. Respondent, on the other hand, contends that the release was fraudulently obtained by appellant's agents and that such fraudulent procurement of the release constituted a fraudulent act accompanying the breach of the insurance contract, sustaining the recovery of both actual and punitive damages.

Respondent's testimony shows that she signed the release on a second visit by appellant's agents. On the first visit, she was told that the company had learned from the doctor that her husband had a prior illness which had not been disclosed, and that they would not pay the amount of the policy but would agree to return the premiums. She told the agent, at that time, that she would not sign the release, but "would have to think about it." She testified that another agent visited her at a later time and, as a result of her conversation with him, she signed the release and a few days later was mailed a check by the company, which she cashed. Her testimoney fails to disclose any representations made by the second agent; she only testified that "he told me a lot of things," after which the release was signed.

The foregoing evidence fails to show any acts or conduct to sustain a finding that fraud was practiced upon respondent at the time the release was executed

and the premiums returned. There was therefore no basis for an award or punitive damages and the trial judge erred in submitting that issue to the jury.

However, the failure to prove a fraudulent act accompanying the breach of the contract will not preclude respondent from recovering actual damages, or the face of the policy, if she is otherwise entitled to, recover. *Broome v. Travelers Insurance Co.,* 183 S. C. 413, 191 S. E. 220; *Jones v. Metropolitan Life Insurance Company,* 206 S. C. 139, 33 S. E. (2d) 384.

It is clear that the return of the premiums was made in an attempt by appellant to effect a rescission of the policy and that no amount was paid in settlement of any claim arising from the death of the insured. The alleged release of all claims under the policy was clearly, therefore, without consideration and ineffectual except as a receipt for the returned premiums.

The real contention of appellant is that the release and return of the premiums evidences, as a matter of law, a mutual rescission of the policy. We do not think that it can be given such conclusive effect.

There can be, of course, a cancellation of a life insurance policy by mutual agreement between the beneficiary and the company after the death of the insured. Whether cancellation of the policy by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct and words taken in connection with the attendant circumstances. "There must be a meeting of minds, or mutual assent, to constitute a valid cancellation, and each party must act with knowledge of the material facts." *Dill v. Lumbermen's Mutual Insurance Company,* 213 S. C. 593, 50 S. E. (2d) 923; *Lundy v. Lititz Mutual Insurance Company,* 232 S. C. 1, 100 S. E. (2d) 544.

The record shows that the release was signed by respondent on July 28, 1974 and this action was instituted by her, about eighteen (18) days later,

on August 15, 1974. Although respondent could read and write, the testimony reveals that she was uneducated and inexperienced. She refused, on the first try by appellant's agent, to sign the release. Another agent was then sent, who, as respondent expresses it, after "a nice conversation about my husband death" which always upset her was able to persuade her to sign the release, giving up the entire proceeds of the policy. While the matter is not free of difficulty, we think the testimony presented a factual issue as to whether respondent, uneducated as she was, acted with knowledge of the material facts so as to render her acts an agreement to the cancellation of the policy.

The evidence sustains the findings, implicit in the verdict of the jury, that the insured practiced no fraud on the appellant; and that the execution of the release and return of the premiums in this case did not constitute a cancellation of the policy so as to bar recovery by respondent of the face amount of the policy. The trial judge properly submitted these issues to the jury for determination.

The contention of appellant that respondent should not be permitted to challenge the validity of the alleged release, because there was no tender of a return of the amount paid at the time of the execution of the release, will not be considered, since the point was not raised or passed upon in the lower court. *Falco Corp. v. Anderson Norgetown, Inc.,* 263 S. C. 120, 208 S. E. (2d) 40.

The judgment for actual damages is, accordingly, sustained and the judgment for punitive damages is reversed.

Moss. C. J. LITTLEJOHN and NESS, JJ., and BRAILSFORD, Acting Associate Justice, concur.