813 F.2d 1331
 Jimmy HINES, d/b/a Hines Nursery, Appellant,
v.
IBG INTERNATIONAL, INC.; Roper Corporation, Appellees,
and
E.I. DuPont de Nemours & Company; Reichold Chemicals, Inc.;
Glasteel, Inc.; I.B.G. Ickes-Braun Glasshouses,
Inc., H.H. Robertson Company, Defendants.
 No. 85-1800.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 8, 1986.
Decided March 23, 1987.
 
 Robert B. Stringer, San Francisco, Cal., (William C. Cleveland, McKay & Guerard, P.A., Charleston, S.C., on brief), for appellant.
 Robert W. Foster, Jr. (Stephen G. Morrison, Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on brief), for appellees.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 The plaintiff, who operated a complex of seven commercial greenhouses in Monck's Corner, South Carolina, asserted multiple causes of action against the general contractor who constructed the greenhouses and the suppliers of fiberglass glazing material used in constructing the greenhouses. After a relatively short period of use, the fiberglass panels in six of the greenhouses began turning opaque, transmitting less and less light to the plants in the greenhouses, until the plaintiff abandoned the business a little over ten years after it began.
 
 
 2
 The greenhouses were constructed between 1972 and 1974 at a cost to Hines of approximately $426,000. Profitability was adversely affected by competition from a nearby greenhouse complex that was in operation from 1977, but it is undisputed that the real cause of the demise of the business was the deterioration of the fiberglass panels in six of the seven greenhouses.
 
 
 3
 Over time, exposure to the weather and to the sun's ultra violet rays causes untreated fiberglass panels to change from clear to light brown. The change reduces the amount of sunlight that can be transmitted through the panels. In the 1960's, the DuPont Company developed a material marketed under the name of "Tedlar." It is a clear film that, when bonded to the outside surface of the fiberglass panel, is supposed to give substantial protection to the panel from the adverse effects of weather and ultra violet rays. DuPont sold Tedlar to the manufacturers of fiberglass panels, Resolite and Reichold Chemicals, Inc., who supplied the panels for the Hines greenhouses.
 
 
 4
 Unfortunately, on six of the seven greenhouses, Tedlar peeled off exposing the unprotected panels to the weather and ultra violet rays. The apparent cause was sodium contamination of the chemical providing the ultra violet light inhibitor in Tedlar.
 
 
 5
 The panels began to change color when the Tedlar coating failed.
 
 
 6
 The plaintiff asserted multiple causes of action against IBG International, Inc, the general contractor, DuPont, Reichold, H.H. Robertson and Company, of which Resolite is a division, and others.
 
 
 7
 After the plaintiff put on his case-in-chief, DuPont, Reichold and Resolite entered into a settlement agreement with Hines. In return for covenants not to sue, the settling defendants "guaranteed" the payment of $850,000 to Hines if Hines obtained a verdict against IBG for less than $500,000. The guaranty was for $1 million dollars if Hines should obtain a verdict against IBG for $500,000 or more.
 
 
 8
 IBG refused to settle, and the case went to the jury with it as the sole defendant on three separate causes of action, one for fraud, one for breach of contract accompanied by a fraudulent act, and another for violation of the South Carolina Unfair Trade Practices Act. The court did not submit a simple breach of contract claim to the jury. The jury returned a verdict for Hines on the breach of contract accompanied by a fraudulent act claim and awarded compensatory damages in the amount of $425,000, but no punitive damages. On the other two causes of action, it returned verdicts for the defendant.
 
 
 9
 IBG moved for a setoff of the funds guaranteed to Hines by the settling defendants. The district court granted the motion, being of the view that the guaranty of payment was the equivalent of the receipt by Hines of the money. The settling parties then undertook to rescind their agreement and to enter into a new settlement agreement. Under the new agreement, the three settling defendants lent Hines an aggregate of $1 million dollars, but the loans were repayable only to the extent of 50% of any money Hines might collect from IBG. IBG again moved for a setoff, and the motion was granted.
 
 
 10
 Hines moved alternatively for judgment notwithstanding the verdict on the fraud and Unfair Trade Practices Act claims or for a new trial. The motion was denied.
 
 I.
 
 11
 The most serious question in the case arises out of the contention that the verdict was fatally inconsistent. Since the jury brought in a verdict for Hines on the claim of breach of contract accompanied by a fraudulent act, it is said that the jury clearly found IBG was guilty of fraud and that the jury could not consistently bring in a verdict for the defendant on the fraud and Unfair Trade Practices claims. We are not persuaded that this is so.
 
 
 12
 The fraud claims had two branches.
 
 
 13
 Hines contended that IBG told him that the Resolite panels were warranted for twenty years when it knew that they were warranted only for ten. There was substantial evidence, however, that IBG did no more than truthfully and innocently relay information that the panels had a twenty year life rating rather than a twenty year warranty.
 
 
 14
 Reichold agreed with IBG that it would warrant its panels for twenty-five years, and IBG told Hines that those panels had a twenty-five year warranty. Hines contended that fraud inhered in that representation since he did not know IBG was not the manufacturer of the Reichold panels. He reasonably thought that IBG was the warrantor, and he charged that IBG never intended to honor the warranty since IBG was relying upon Reichold, and IBG's contract with Hines limited the warranties of purchased materials to those of the manufacturers.
 
 
 15
 On the evidence, the jury might reasonably have found that there was no misrepresentation respecting the Resolite panels, and that any misrepresentation respecting the warrantor of the Reichold panels caused the plaintiff no injury. The jury found that IBG had broken its contract and it awarded compensatory damages, but its declination to award punitive damages strongly suggests that any fraudulent act the jury found IBG to have committed was not serious or caused the plaintiff no harm. In South Carolina, a claim of breach of contract accompanied by a fraudulent act is an action in contract except that proof of the accompanying fraudulent act permits the award of punitive damages. Ateyeh v. Volkswagen of Florence, Inc., 288 S.C. 101, 103, 341 S.E.2d 378, 379-80 (1986). While the jury had not been told that it could award compensatory damages upon proof of a breach of contract without regard to any fraudulent act, it may well have thought that it could do so. Such knowledge may have been within the common experience of many of the jurors. It is well established that failure to prove a fraudulent act accompanying the breach of contract will not preclude an award of compensatory damages. Gavin v. North Carolina Mutual Insurance Co., 265 S.C. 206, 215, 217 S.E.2d 591, 595 (1975). Further, the jury surely was free to find for the defendants on the fraud and Unfair Trade Practices Act claims if it found that any fraudulent act committed by IBG was trivial or inflicted no appreciable harm on the plaintiff.
 
 II.
 
 16
 Even if the verdicts are inscrutable, however, their apparent inconsistency is not fatal.
 
 
 17
 While the jury was required to bring in a separate verdict on each of the three separate causes of action, the verdict on each claim was a general one, not a special finding of underlying facts. This is not a case of specific findings demonstrating "confusion and manifest misapprehension of the jury of the issues." Bickel, Judge and Jury--Inconsistent Verdicts in the Federal Courts, 63 Harv.L.Rev. 649, 654 (1950).
 
 
 18
 These are general verdicts, incapable of being nicely dissected into their constituent parts.
 
 
 19
 It has long been accepted that inconsistent verdicts in criminal cases must be accepted. Harris v. Rivera, 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981); Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The same principle has been applied in civil cases. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933); Jayne v. Mason & Dixon Lines, Inc., 124 F.2d 317 (2d Cir.1941).
 
 
 20
 In Fairmount Glass Works, in an opinion authored by Mr. Justice Brandeis, the Court upheld a verdict by a jury for the plaintiff in the amount of $1, though the claim was for breach of contract and a simple mathematical computation demonstrated that the actual damages exceeded $18,500. In such a case, the district judge had the discretion to award a new trial on the ground that the verdict was against the weight of the evidence, but the powers of appellate courts are much more limited. Fairmount Glass Works, 287 U.S. at 484-85, 53 S.Ct. at 255.
 
 III.
 
 21
 Hines complains of the orders of the district court offsetting the amounts obtainable by Hines under the successive settlement agreements against the verdict. We think the orders were entirely appropriate.
 
 
 22
 The essence of the plaintiff's argument here is that he was entitled to treble damages under the South Carolina Unfair Trade Practices Act, S.C.Code Ann. Sec. 39-5-140(a) (1985). If one accepts the jury's finding that the actual damages amounted to $425,000, trebling that figure would produce a basic recovery of $1,275,000. If one adds to that attorneys' fees and costs, also recoverable under that statute, estimated at $290,000, one reaches what the plaintiff calls his full "entitlement" of $1,565,000. Those figures, of course, exceed the $1,212,500 he would have obtained if judgment in his favor had been entered upon the jury's verdict without any offset, he had collected the $425,000 from IBG and repaid the settling defendants to the extent of $212,500. Hines relies upon Truesdale v. South Carolina Highway Department, 264 S.C. 221, 235, 213 S.E.2d 740, 746 (1975) (overruled on other grounds by McCall v. Batson, 285 S.C. 243, 329 S.E.2d 741 (1985).
 
 
 23
 The difficulty with the plaintiff's contention is that there has been no adjudication that anyone was liable to the plaintiff on the Unfair Trade Practices Act claim. Hines settled with all of the defendants, except IBG, and his Unfair Trade Practices Act claims against them were dismissed with prejudice. The jury found against the plaintiff on that claim against IBG. From the amount of the settlements, one can suppose that the settling defendants thought there was possible exposure to a treble damages claim, but that is entirely speculative since the compensatory damages were unliquidated and the plaintiff was seeking such damages in sums substantially greater than that found by the jury.
 
 
 24
 Nor does the plaintiff fare any better in his contention that he was entitled to judgment n.o.v. on his Unfair Trade Practices Act claim against IBG. IBG put on no evidence, but the plaintiff had the burden of persuasion. The jury was entitled to resolve conflicts against the plaintiff. Where the testimony was susceptible to more than one inference, it was entitled to draw the inference adverse to the plaintiff's case. It was free even to find itself unpersuaded by the plaintiff's evidence tending to show a violation of the state statute.
 
 
 25
 The purpose of the offset rule, of course, is to prevent double recovery. Once the plaintiff has been compensated for an injury, he should not be allowed, to that extent, to recover compensation from another for the same injury. Truesdale, 264 S.C. at 234-35, 213 S.E.2d at 746. The purpose of the rule might best be served by disregarding any possible trebling damages rule. The jury fixed the compensatory damages at $425,000, and the settlement had already given the plaintiff much more than that. The purpose of the treble damages provision under the Unfair Trade Practices Act is not to compensate the plaintiff, but to punish the defendant and to provide inducement for the plaintiff to act as a private attorney general. Those considerations have little to do with application of a rule against duplicative recovery of compensatory damages, but we need not undertake decision of that question for the predicate of the plaintiff's contention here is simply unestablished.
 
 IV.
 
 26
 The plaintiff has made several other contentions of error, in none of which do we find any merit.
 
 
 27
 AFFIRMED.