885 F.2d 864
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald Joseph FOX, Jr., Ronald E. Tillmann, Edward G.
McCabe, Mark Uhles, Plaintiffs-Appellees,
and
Michael Kochlany, Plaintiff,
v.
DYNAMARK SECURITY CENTERS, INC., Wayne E. Alter, Jr.,
Defendants-Appellants.
Ronald Joseph Fox, Jr., Ronald E. Tillmann, Edward G.
McCabe, Mark Uhles, Plaintiffs-Appellants,
and
Michael Kochlany, Plaintiff,
v.
DYNAMARK SECURITY CENTERS, INC., Wayne E. Alter, Jr.,
Defendants-Appellees.
 Nos. 88-1154, 88-1155.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1989.
Decided Sept. 1, 1989.
Rehearing Denied Oct. 18, 1989.
 
 Dale A. Cooter (James Emil Tompert, Cooter & Gell on brief) for appellants.
 Patrick G. Cullen (Rollins, Smalkin, Richards & Mackie on brief) for appellees.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and FRANK A. KAUFMAN, Senior United States District Judge, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 This appeal raises several issues related to a trial for fraud, breach of contact, and violation of the Maryland statute prohibiting misrepresentation in the sale of franchises. Defendants-appellants Dynamark, Inc. and Wayne Alter, Jr., the president of Dynamark, are seeking reversal of jury verdicts against them on each of the causes stated above. They also claim that the calculation of damages sustained by the four plaintiffs, Ronald J. Fox, Jr., Ronald Tillman, Mark S. Uhles, and Edward G. McCabe was incorrect. The verdict is further complicated because the jury found that plaintiffs Fox and Tillman had breached the same franchise agreements that it had found Dynamark to have breached. Fox and Tillman have cross-appealed this aspect of the verdict. Because of the inconsistent jury verdict, several serious errors in the determination of damages, and an erroneous jury instruction, we reverse and remand for a new trial.
 
 I.
 
 2
 Although the parties generally disagree as to the legal significance of pertinent events, certain basic facts are not in dispute. In late 1985 and early 1986 Fox, Tillman, Uhles, and McCabe, responding to advertisements placed by Dynamark, contacted Dynamark about purchasing Dynamark franchises. Fox and Tillman now live in Pennsylvania; Uhles and McCabe live in Florida. Dynamark, a Maryland corporation, is engaged in the security alarm business, and its franchisees sell and install Dynamark products. After the plaintiffs first contacted Dynamark, the company arranged individual meetings with company representatives. By February, 1986 each appellee had signed a franchise agreement, and, as the franchise agreement provided, had attended a five and one-half day Dynamark training session in Charlottesville, Virginia. The franchise fee was $12,000, plus approximately $13,000 for initial inventory. The franchise agreement disclaimed any guarantee of potential profit, and, among other things, required the sale of at least eight security systems per month. Plaintiffs opened their businesses, but, after six months of losses, each ceased operating.
 
 
 3
 * Defendants first argue that the jury verdicts should all be reversed and judgment entered in their favor because, as a matter of law, the evidence did not present triable issues of fraud, breach of contract, or of a violation of Maryland's franchise sales statute, Md.Ann.Code Art. 56 Sec. 345 et seq. In addressing this contention we will first briefly outline the evidence submitted at trial relative to the alleged wrongs between November, 1985, and September, 1986.
 
 
 4
 First, as plaintiffs stressed, each of them had four years of college, they were not likely to be easily misled, and each had either sales, electronics, or security experience. Plaintiffs testified that they were told that Dynamark franchisees maintained a one hundred percent success rate and that the typical franchisee sold about fifteen security systems per month. They presented evidence to support their claim that each of these assertions was false; that on a trip to the company warehouse, two plaintiffs were informed that inventory was low because of shipping methods, and not because of a lack of business; that plaintiffs were taken on a tour of an unusually profitable franchise, which was represented as typical, and that Dynamark distributed literature stating that the company was not the object of any pending or past legal action regarding its franchises. Each of these claims, according to plaintiffs' testimony was false.
 
 
 5
 On Dynamark's alleged breach of the franchise agreement, Plaintiffs introduced evidence that Dynamark's mailing and telemarketing advertisements were failures, and included one sales scheme that was barred by Maine's attorney general as an unfair trade practice. They argued that the franchise promise of a "unique" marketing system was a hoax because there was nothing unique about Dynamark's marketing. Plaintiffs also introduced evidence relative to Dynamark's "national trainers," who, according to the agreement, were responsible for helping franchisees set up new businesses, but instead of helping the franchisees, the "trainers" hired ineffective and dishonest sales representatives, most of whom were unproductive and quit soon after being hired.
 
 
 6
 Dynamark and Wayne Alter maintained that they neither engaged in misrepresentation nor breached the franchise agreement. They claimed that Alter himself cannot be liable because he did not make fraudulent statements, that all statements were only in the form of opinion, and thus not actionable, and in the case of plaintiff McCabe, that the representations of the defendants were not relied upon. They presented evidence that the potential franchisees were given a "uniform franchise offering circular," which disclosed the names of current franchisees and encouraged plaintiffs to contact them. Their failure to do so, defendants argue, was evidence of plaintiffs' misunderstanding of the risks of the franchise and was the result of plaintiffs' own neglect.
 
 
 7
 On the breach of contract claim, defendants maintain that they provided the training specified by the agreement. Plaintiffs attended the five and one-half day session in Charlottesville, and they received manuals and videotapes about their new business. In short, defendants claim that Dynamark lived up to its obligations under the Agreement.
 
 
 8
 The elements of fraud in Maryland are (1) a false representation made by a party, (2) of which the falsity was known to the party making it or recklessly made, (3) the misrepresentation was made for purposes of defrauding the plaintiff, (4) the plaintiff reasonably relied upon the statement, and (5) there were damages that resulted from the misrepresentation. Call Carl, Inc. v. BP Oil Corp., 554 F.2d 623, 629 (4th Cir.1977). Maryland statute Article 56, Sec. 365, provides civil liability and legal or equitable damages for offers or sales of franchises made:
 
 
 9
 by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the franchisee not knowing of the untruth or omission, and if the franchisor does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission.
 
 
 10
 Under Sec. 365(c) joint and several liability is also imposed on corporate officers, who, with knowledge, materially aid in such a deceptive scheme.
 
 
 11
 Defendants' principal claim of error on the fraud and statutory verdicts is that all or some of the four plaintiffs failed to introduce evidence of at least one of the five necessary elements of fraud. This related to the lack of evidence of falsehood or reasonable reliance. Without recounting in detail the evidence as to each plaintiff, we find plaintiffs presented a triable issue of fact as to the fraud liability of both Dynamark and Alter. There was evidence that potentially misleading statements of fact were made to each plaintiff and that each plaintiff reasonably relied on such statements. There was also evidence that misleading statements of fact were made to each plaintiff by each defendant. Defendants have pointed out evidence to the contrary on each of these points, but this does not require reversal. It merely reflects that defendants' liability on the fraud and statutory claims raised factual issues which are to be resolved by the jury, and not by the trial judge or this court. There was adequate evidence for the jury to impose liability for fraud and under the Maryland statute as it did.
 
 II.
 
 12
 The breach of contract question is equally easily disposed of because that issue was properly left to the jury. Dynamark claims that it could not breach the franchise contract because its only obligation was to provide "training," presumably even incompetent training, and, if it did so, it would thereby satisfy the terms of the contract. The agreement merely obligated Dynamark to provide "Training in the operation of the Franchised Business prior to its opening," and "Continuing training for such periods and at such locations as may be designated by [Dynamark] including the services of [Dynamark's] Trainer to assist Franchisee in the initial stages of the franchise business, recruiting and training sales representatives and employees and making sales calls with and behalf of Franchisee." However, this court and the Maryland courts have recognized that in addition to the express duties imposed by an agreement, including a franchise agreement, "every contract imposes upon each party a duty of good faith and fair dealing." Entre Computer Centers v. FMG of Kansas City, Inc., 819 F.2d 1279, 1284 (4th Cir.1987). In Maryland, the rule is that "in every contract there exists an implied covenant that each of the parties thereto will act in good faith and deal fairly with others." Food Fair Stores, Inc. v. Blumberg, 200 A.2d 166, 174 (Md.1964). If this duty is to have meaning, the failure to act in good faith and deal fairly is evidence of a breach. As a consequence, it was appropriate for the jury, as the trier of fact, to address and to resolve the question of whether the training provided by Dynamark, including the assistance of the trainers, was so inadequate as to constitute a breach because of bad faith performance and unfair dealing.
 
 III.
 
 13
 Another significant problem is that although the jury was entitled to consider the question of whether defendants were liable under each of the theories raised by the plaintiffs, it was not entitled to resolve the issues in the manner that it did. The most obvious problem in the verdict is the jury's conclusion that, although Dynamark and Alter had breached the franchise agreement with each of the four plaintiffs, plaintiffs Tillman and Fox had also breached the same agreement. The breaches of Tillman and Fox were found to include the nonpayment of fees, lack of attendance at meetings, and failure to use their best efforts to make the franchise succeed. The district court sought to resolve the jury's verdict by determining that the breach was not a single event, "but an accumulation of events," and it held that it was not irrational for the jury to conclude that since both parties had breached, damages should be awarded to both parties.
 
 
 14
 We do not agree. Following trial defendants moved for judgment notwithstanding the verdict or a new trial on the ground that the jury verdict with respect to the contract breaches was inconsistent. This motion should have been granted. Although we recognize that an appeals court is "abjured to determine whether a jury verdict can be sustained, on any reasonable theory," Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1246 (Fed.Cir.1989), Hines v. IBG International, Inc., 813 F.2d 1331, 1334 (4th Cir.1987), and that the trial court's denial of a motion for a new trial can be reviewed only for abuse of discretion, Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir.1987), we believe that here there is no theory, legal or factual, on which the inconsistent verdicts can be reconciled because both parties are not entitled to recover for breach of contract.
 
 
 15
 As a general rule, damages are recoverable by a party in a contract action only when such party has fulfilled its obligations under the contract up to the time of the other party's breach. Equitable Trust Co. v. G & M Construction Co., 544 F.Supp. 736, 742 (D.Md.1982). A logical extension of this denial of damages to the contract's first breach is that "it is clear that in the proper circumstances a court may refuse to allow recovery by either party to an agreement because of their mutual fault, which in contract terms might be described as mutual default." Westinghouse Electric Corp. v. The Garrett Corp., 601 F.2d 155, 158 (4th Cir.1982) (stating Maryland law). These cases establish not only that the first breaching party cannot generally recover, but that, in some instances, neither party may be entitled to damages. See also National Micrographics Systems, Inc. v. OCE-Industries, Inc., 645 A.2d 862, 873 (Md.App.1983) ("One party may not recover from another party under a contract unless the former has performed or is ready and willing to perform"); Fromm Sales Co. v. Troy Sunshade Co., 159 A.2d 860, 863 (Md.1960) (failure of first breacher to show justification for breach should result in directed verdict against it).
 
 
 16
 The jury verdict was in the form of answers to specific questions and found that defendants "breached [their] franchise agreement" with the various plaintiffs, and in answer to another question found that Fox and Tillmann breached their franchise agreement with the defendants. Both parties had introduced evidence of material breach. This verdict, and the form in which it was delivered, does not have any support under Maryland law, which denies recovery to the contract's first breacher. Therefore, the jury verdict may not stand.
 
 IV.
 
 17
 The source of the damages problem was an erroneous instruction to the jury. The court's instructions to the jury on how to determine damages for fraud and for breach of contract were:
 
 
 18
 In considering damages, you must keep in mind that your award must adequately and fairly compensate the plaintiffs for their monetary losses, but your award should not be based on speculation or guesswork.
 
 
 19
 Likewise, if you decide for the counterclaim plaintiff, the same rules apply in considering damages.
 
 
 20
 On the contract claims the plaintiff and the counterclaim plaintiff may recover those damages that are the consequences of breaking the contract which the defendants had reason to foresee would take place.
 
 
 21
 The party harmed by breach of contract may recover monies spent and expenses incurred if they were spent or incurred in justifiable reliance on the contract being performed. This amount should be reduced by any loss the breaching party would have had if the contract had been performed.
 
 
 22
 If you find for any of the plaintiffs on his claim of fraud, you may [award] that plaintiff such damages as will compensate him for his out of pocket losses. That is you may award as damages such sums as are adequate to return him economically to the position he was in prior to the fraudulent transaction.
 
 
 23
 A person has the duty to try to lessen the loss he may suffer as a result of what another person does. He may not recover for any damage that he could have avoided by making a reasonable effort without risk of additional substantial loss of injury.
 
 
 24
 The remainder of the charge on damages addressed the nature of punitive damages and the burden of proof in determining damages.
 
 
 25
 The primary problem with the instruction was that it failed to inform the jury that in Maryland, "the law gives to a defrauded party an election between two inconsistent and mutually exclusive remedies. He may, 'by appropriate action, promptly rescind the contract and be restored to [his] former position' or he may 'affirm [the contract] and claim damages due to the concealment or misrepresentation.' " Kalb v. Vega, 468 A.2d 676, 682 (Md.App.1983), quoting Nelley v. City of Baltimore, 166 A.2d 234, 236 (Md.1960). Here the jury was given a verdict sheet which allowed it to find amounts for "compensatory damages" and "punitive damages" without being informed of the exclusivity of remedies or of the possible effect of a particular election. A finding of fraud would justify punitive damages while a finding of a simple breach of contract would not. Plaintiffs did not make an election of remedies until after the verdict was returned.
 
 
 26
 Under the circumstances the attempt by the district court to mold a coherent verdict out of the formless decision of the jury came too late. First, there is the very real possibility that duplicative damages were awarded. The jurors were not told that in Maryland plaintiffs could not recover for both fraud and breach of contract. It is not enough, as plaintiffs argue, that the amount of the damages awarded may have been recoverable under the alternate theories of liability under the Maryland franchise statute, fraud, or breach of contract. Second, and more seriously, the court misled the jury as to the kind of damages available in an intentional fraud action in Maryland, where the courts have not restricted fraud victims to "out of pocket damages," but, in certain circumstances, have allowed compensation under the "benefit of the bargain" standard. Importantly, a determination of which kind of damages is available revolves around (1) the choice of the defrauded party, and (2) the degree of certainty by which benefit of bargain damages can be proved. Weisman v. Connors, 519 A.2d 795, 803 (Md.App.1987), rev'd on other grounds, 540 A.2d 783 (Md.1988); Hinkle v. Rockville Motor Co., 278 A.2d 42, 47-48 (Md.1971). The instruction was in error because the jury was not instructed on the crucially important fact that remedies are exclusive nor instructed of the alternate methods of measurement of intentional fraud damages. These errors raise a question as to the fairness of the entire trial.
 
 
 27
 As this court has noted, the test of adequacy of instructions "is not one of technical accuracy in every detail." Instead, it is "the practical one of whether the instructions construed as a whole, and in the light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir.1987), cert. denied, 108 S.Ct. 752 (1988). Although the form of the verdict is committed to the discretion of the trial judge, this court must consider whether the form "adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the ultimate questions of facts were clearly submitted to the jury." Klein v. Sears Roebuck and Co., 773 F.2d 1421, 1427 (4th Cir.1985); Cunningham v. M-G Transport Services, Inc., 527 F.2d 760, 762 (4th Cir.1975) (questions should be framed "so that the jury knows what it is deciding."). Because of the nature of the damages instruction, and the evident confusion of the jury as to contract liability, and because the verdict form failed to distinguish among available damages, we believe that the jury was both confused and misinformed to the prejudice of the defendants. As a consequence, in the interest of achieving a fair trial the case must be reversed and remanded. On retrial the district court should address our concerns about its instructions and the verdict form.
 
 V.
 
 28
 A retrial is required, and to clarify and correct other aspects of the case, we will consider some of the remaining issues. First, the district court was correct in holding that plaintiffs-appellees were not entitled to future lost profits. Plaintiffs did not produce sufficient evidence, largely because of the newness of their businesses, so that lost profits could be proved to a "reasonable certainty." Impala Platinum Ltd. v. Impala Sales, Etc., 389 A.2d 887, 907-908 (Md.1978). Second, there was no error in the district court's charge that the jurors should examine the case "with a proper regard and deference to the opinions of each other." This was not a charge under Allen v. United States, 164 U.S. 492, 501-502 (1896) because it was not given after lengthy jury deliberation in an attempt to force the jury to a decision. Third, we find no reversible error on defendants' claim of improper jury argument or because the district court refused to award attorney's fees incurred during discovery, or because the district court failed to allow defense attorneys to interview a juror after the trial. All of these acts were within the sound discretion of the trial judge and this discretion was not abused.
 
 
 29
 There are several other matters that should be corrected on retrial. First, the plaintiffs sued as individuals for individual losses; their corporations were not parties to this lawsuit. As a result, losses other than those personal to the plaintiffs should be excluded. Second, two other exceptions to the jury instructions and the amount of damages have merit. There was obviously confusion as to whether the value of inventory should be deducted from the damage award. On remand it should be made clear that the value of the inventory must be accounted for. Third, plaintiffs, Uhles and McCabe, were not employed at the time they signed the franchise agreement, yet the jury appeared to compensate both men for lost wages. Whether any future award is based upon a reliance or a benefit of the bargain theory, neither of these men would be entitled to compensation for wages that they would not have earned. Fourth, the district court's refusal to consider an award of defendants' attorney's fees against plaintiff Fox and Tillman under a finding of contract breach by such plaintiffs should be reconsidered by the trial judge in the event defendants should obtain a verdict on their counterclaim upon retrial.
 
 V
 
 30
 In sum, although plaintiffs and defendants have presented sufficient factual evidence to have their claims determined by a jury, a confusing verdict by the jury as to liability and errors in the instructions require reversal and a remand to the district court for a new trial.
 
 
 31
 REVERSED AND REMANDED.