15820

CROFT v. HALL *ET AL.*

(37 S. E. (2d), 537)

*Messrs. N. A. Turner* and *Edward A. Harter, Jr.,* both of Columbia, and *Julian S. Wolfe* and *P. L. Felder,* both of Orangeburg, Counsel for Appellants,

*Mr. A. J. Hydrick,* of Orangeburg, Counsel for Respondent,

March 19, 1946.

Mr. Associate Justice Stukes delivered the Opinion of the Court.

The city of Orangeburg has an ordinance whereby operators of taxicabs are required to procure and file with the city clerk liability insurance policies in stated amounts and with stipulated conditions, for personal injury and property damage. The appellants, Hall, are alleged to have been so engaged, with the other appellant as their insurer.

Dewey Whetstone was a driver for them and about midnight on December 27, 1943, undertook to take two passengers to their respective homes in the country and he carried his wife, Mrs. Ruby C. Whetstone, as a guest. It was

a rainy and foggy night and after he turned off a main highway several miles from the city he decided, on account of the unfavorable driving conditions, to return to the city before reaching his destinations. Accordingly, he turned around and when he reached the intersection of the highways he drove across the road junction, over a ditch and into an enbankment beyond. The car was upset and the occupants suffered various injuries. Mrs. Whetstone was extricated from the wreckage and laid upon the road until passersby came and took her to the hospital in Orangeburg where she died a little more than a day later.

The action is by the administratrix of her estate, brought under the survival statute, Sec. 419 of the Code of 1942. It was alleged that the deceased was a guest in the taxicab and was injured by acts of the driver which were "heedless and in reckless disregard of the rights of plaintiff's intestate" in stated particulars. Further allegation of the complaint is quoted as follows: "* * * inflicting upon her head facial and bodily injuries from which she suffered continuous and violent pain and anguish"; and also the following: "That the injury to the person, the pain and anguish sustained and suffered by the said Ruby C. Whetstone were proximately caused", etc. The concluding paragraph of the complaint is as follows: "That the plaintiff brings this action for injury to the person, pain and anguish suffered by the said Ruby C. Whetstone in her lifetime for the benefit of her estate."

The appellant insurer moved for the dismissal of it as a defendant and also demurred upon the ground of improper joinder because its liability was contractual and respondent was suing upon tort. The motion and demurrer were overruled, from which there is an appeal which is restricted to the point that the insurance was required by a city ordinance and that the alleged tort occurred without the geographical limits of the city. (This position would not be available to the insurer-appellant but for the acquiescence of respondent, as will be later explained.)

The defendants Hall and their insurer answered separately and the case proceeded to trial. At the conclusion of the evidence the trial judge directed a verdict for the defendants upon the ground that the only reasonable inference of which it was susceptible was that the deceased was unconscious from the time of the accident until death, and therefore, suffered no conscious pain, to which element of damages plaintiff was limited. But on motion for new trial the court reversed itself and held that there was sufficient in the testimony of the mother of the deceased to take that issue to the jury. The exceptions challenge the correctness of this conclusion.

Respondent has submitted an additional ground upon which she contends that the order granting a new trial should be sustained. It is to the effect that conscious pain was only one of the elements of damage alleged in the complaint and that in addition there were allegations and evidence of bodily injuries which resulted in physical disfigurement. But we need not consider whether the latter is a recoverable element of damages in the case and, if so, whether it was adequately alleged in the complaint, for we conclude that the lower court did not err when it granted a new trial upon the ground stated.

The first issue which we shall discuss is not really raised on the record, as has been mentioned. That the accident happened outside of the city limits was not made a ground of the motion to dismiss, the demurrer to the complaint or the motions for nonsuit and directed verdict in behalf of the insurer. However, this is expressly waived by respondent in her brief and she joins appellants in arguing the point, which will be decided. This course is convenient for the proposition is alleged in the answers as a defense and the case will have to be tried again.

The appellant-insurer recognizes the authority of *Bryant v. Blue Bird Cab Co.*, 202 S. C., 456, 25 S. E. (2d), 489, but attempts to distinguish it upon the fact that there the alleged tort was committed within the city of Greenville

where the cab company was licensed to do business and insured against liability in compliance with an ordinance, whereas here the injury was inflicted outside Orangeburg. Incidentally, question of the authority of the city council to enact the ordinance and that it is a "law" within the terms of Sec. 487 of the Code of 1942 are not contested. The latter statute provides, insofar as now pertinent, as follows: "In all cases where it is now or hereafter provided by law that an indemnity bond or insurance must be given by a principal for the performance of contract or as insurance against personal injury founded upon tort, the principal and his surety, whether on bond or insurance, may be joined in the same action and their liability shall be joint and concurrent."

The *Bryant-Blue Bird case,* above, and this are different in this respect. The Greenville ordinance, which is set out in the opinion, required security of licensed taxicabs for payment of damages inflicted "on the streets" and "arising in the city." These provisions are not in the Orangeburg ordinance. It requires (Sec. 25) "a liability insurance policy" for licensing for operation on the streets of the city (Sec. 2) but does not purport to restrict the applicability of the insurance to the area of the city. On the contrary, the ordinance clearly contemplates the operation of the taxicabs licensed under it from points within the city to points without. Indeed, Section 17 (c) fixes passenger mileage rates which shall apply to transportation to and from points in the city and across its boundaries. Appellants appear to proceed upon the premise that the Greenville and Orangeburg ordinances are the same, but they are not.

The result indicated is not giving extraterritorial effect to the ordinance. It was passed for the very patent purpose of providing financial protection to the users of taxis licensed by the city for transportation of the public. That such use often entails travel beyond the city limits is within common knowledge. The case has a recent parallel in our reports, *McIntosh v. Whieldon,* 205 S. C., 119, 30 S. E.

(2d), 851. Legally required cargo insurance was issued and applicable to loss in another state of a shipment originating here; and shipper was allowed recovery against the insurer in his action against it and the carrier. The policy in the case before us covers liability for damages occurring in the city and a ten-mile radius; the accident happened about three miles from the city.

The weight of authority in other jurisdictions accords with the view which we have indicated. This is seen by reference to the annotation in 154 A. L. R., 520, which superseded the earlier one in 22 A. L. R.

Appellants say in their brief: "The departure from the general rule (of exclusion of evidence of insurance) in these cases is based upon the theory that, as such insurance is required by a public act which all citizens are presumed to know, the jurors already have knowledge of such coverage and no prejudice can result." We think this case comes within the stated exception to the general rule. The liability insurance was required by municipal ordinance which also required that the policy be filed (Sec. 25) with the city clerk, all of which is quite public.

The remaining problem for solution is: Should the issue of pain and suffering have been submitted to the jury, as decided by the trial judge on motion for new trial? Unless respondent's intestate consciously suffered there should be no recovery of damages on that account. *Camp v. Petroleum Carrier Corp.*, 204 S. C., 133, 28 S. E. (2d), 683. But the facts of this case are nearer those of *Peeples v. S. A. L. Ry.*, 115 S. C., 115, 104 S. E., 541, and *St. Louis, I. M. & S. R. Co. v. Craft*, 237 U. S., 648, 59 L. Ed., 1163, 35 S. C. R., 704. We think, like the lower court finally concluded, that the evidence required that the jury pass upon this issue.

Respondent's factual showing thereabout was weak but there was more than a scintilla of evidence tending to prove the point. The circumstances of the wreck and the fact that intestate survived the finally fatal injuries for about twenty-

nine hours, with some movement abed, point to the fact of suffering. More important is the following testimony of her mother, quoted from the record:

"Q. When did you first learn of the injuries to your daughter?

"A. Six o'clock in the morning.

"Q. You went for her?

"A. As soon as I could, about eight o'clock when I got there.

"Q. You found her at the hospital?

"A. Yes, sir.

"Q. What was her condition?

"A. As soon as I got on the floor I could hear her making terrible noises. She was just talking; this hand and leg just going; there was terrible, raging pain. She appeared to be paralyzed on this side.

"Q. Did you remain with her?

"A. Yes, sir.

"Q. She passed away the next morning?

"A. Yes, sir, about six o'clock.

"Q. Tell us whether or not in your opinion she suffered?

"A. I really believe that if anybody ever suffered in that hospital she did.

"Q. Did she have any bruises about her person?

"A. I saw some bruises on her neck.

\* \* \*

"Q. You think your daughter ever recognized you?

"A. I really do.

\* \* \*

"A. I called her and I said, 'Ruby, this is mama come to see you.'. She opened her eyes and looked at me several different times."

There was positive testimony of the physician, nurses and others that in their opinion there was no conscious suffering, which may convince the jury upon trial to that conclusion, and it might so persuade us were we empowered to find the facts; but that is the jury's province in this, a

law case. As was said by the United States Supreme Court in *Craft's case, supra,* our decision is not of the preponderance of the evidence but whether there was any from which the jury could reasonably find conscious pain and suffering.

Appellants finally argue in their brief that respondent's intestate was not a passenger in the taxicab or a member of the public within the protection of the liability insurance policy, but we do not find that this contention was made in any manner in the lower court.

The exceptions are overruled, the orders appealed affirmed, and the case remanded to the Circuit Court for further proceedings.

MESSRS. ASSOCIATE JUSTICES TAYLOR, OXNER and MESSRS. ACTING ASSOCIATE JUSTICES J. HENRY JOHNSON and G. DUNCAN BELLINGER concur.