528 S.E.2d 682

Bonolla L. Black SMALLS and Donald S. Smalls, as Personal Representatives for Estate of Brittany Antoinette Smalls, Respondents,

v.

The SOUTH CAROLINA DEPARTMENT OF EDUCATION, Appellant.

No. 3122.

Court of Appeals of South Carolina.

Heard Nov. 4, 1999.

Decided Feb. 22, 2000.

212

James D. Nance, of Nance & McCants, of Aiken, for appellant.

Richard A. Harpootlian and Robert G. Rikard, both of Richard A. Harpootlian, P.A.; and Carl B. Grant, all of Columbia, for respondents.

STILWELL, Judge:

Bonolla and Donald Smalls (the Smalls) brought wrongful death and survival actions against the South Carolina Depart-

ment of Education (Department) after their daughter, Brittany Antoinette Smalls, was struck and killed by a pickup truck as she crossed the road. The jury returned a verdict in favor of the Smalls. Department appeals, arguing the trial court erred in various evidentiary and jury charge rulings and failed to grant its motions for a directed verdict, new trial, and judgment notwithstanding the verdict (JNOV). We affirm as modified.

## BACKGROUND

Eight-year-old Brittany was killed when a pickup truck driven by Vincent Bussiere accidentally struck her early one morning as she crossed a two-lane road to catch her school bus. Brittany was taken immediately to a nearby hospital where she died of severe head injuries two days later.

The Smalls initially brought wrongful death and survival actions against Bussiere and Bussiere's employer, T.F. Anderson & Sons, Inc. Thereafter, the Smalls filed an amended complaint adding Department as a defendant. In their amended complaint, the Smalls alleged that Walter Parker, the school bus driver, "required school children along his bus route to cross the highway from the side where their houses are to [the] side where the bus would stop and pick them up before the school bus arrived at the bus stop." The Smalls alleged state and local school district policies were violated when the driver required the children to cross the highway before the bus arrived. The Smalls claimed Bussiere was negligent in hitting Brittany and further, that she would not have been out in the road absent the instructions of Department's bus driver.

Prior to trial, Smalls settled with Bussiere and T.F. Anderson & Sons, Inc. for $100,000. Of this amount, $90,000 was allocated to the wrongful death action and $10,000 to the survival action. The case went to trial with only Department remaining as a named defendant. The jury returned a verdict for Smalls in the amount of $600,000 for the wrongful death action and $310,000 for the survival action. Because the jury found Brittany eighteen percent negligent and Department eighty-two percent negligent in causing the accident, the trial court reduced the verdict by eighteen percent, thus resulting

in an award of $492,000 for the wrongful death cause of action and $254,200 for the survival cause of action. Upon motion by Department, the trial court further reduced the verdict as required by the Tort Claims Act and awarded $250,000 on each cause of action, for a total judgment of $500,000.[1]

## LAW/ANALYSIS

### I. New Trial Nisi Remittitur or JNOV (Survival Action)

■ Department argues the trial court erred in declining to reduce the $310,000 jury verdict in the survival action to the amount of the victim's medical bills, $33,926.10, because there was no evidence Brittany suffered conscious pain and suffering prior to her death. Department contends it was entitled to a new trial nisi remittitur or JNOV. We disagree.

■ A motion for new trial nisi remittitur asks the trial court to reduce the verdict because the verdict is merely excessive. *See O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993). "If the amount of the verdict is *grossly* inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute," not a new trial nisi remittitur. *Id.* at 527, 431 S.E.2d at 556 (emphasis in the original). The jury's determination of damages, however, is entitled to substantial deference. *See Pelican Bldg. Ctrs. of Horry–Georgetown, Inc. v. Dutton*, 311 S.C. 56, 427 S.E.2d 673 (1993). "The denial of a motion for a new trial *nisi* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion." *O'Neal*, 314 S.C. at 527, 431 S.E.2d at 556.

■ "In deciding a motion for JNOV, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party; if more than one inference can be drawn, the case must be submitted to the jury." *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998). The jury's verdict will not be overturned if any evidence exists that sustains the factual findings implicit in its decision. *Shupe v. Settle*, 315 S.C. 510, 445 S.E.2d 651 (Ct.App.1994).

---

1. The limits are currently $300,000 and $600,000. S.C.Code Ann. § 15–78–120(a) (Supp.1999).

■ The South Carolina survival statute provides that a cause of action for injuries to a person shall survive the person's death, with damages recoverable by the legal representative of the deceased. S.C.Code Ann. § 15–5–90 (1976). Damages in a survival action include recovery for the deceased's conscious pain and suffering and medical expenses. *See generally Baker v. Sanders*, 301 S.C. 170, 391 S.E.2d 229 (1990) (ruling that the Tort Claims Act does not preclude a survival action for conscious pain and suffering and medical expenses when an injured person later dies as a result of the tort). In addition, § 15–5–100 authorizes recovery for funeral expenses. S.C.Code Ann. § 15–5–100 (1976). Brittany's medical bills totaled $33,926.10, and her funeral expenses were $4,622.25.

Department contends Brittany never regained consciousness and cites *Croft v. Hall*, 208 S.C. 187, 37 S.E.2d 537 (1946), for the proposition that recovery in a survival action is limited to the medical or other out-of-pocket expenses absent proof that the deceased consciously suffered pain. In *Croft*, the victim was seriously injured in an automobile wreck and survived for about twenty-nine hours before she died. *Id.* at 193–94, 37 S.E.2d at 539. The attending physician, nurses, and others testified the victim did not consciously suffer pain after being injured in the wreck. *Id.* at 194, 37 S.E.2d at 540. In contrast, the victim's mother testified her daughter made "terrible noises," jerked her arms and legs while in her hospital bed, and opened her eyes several times when she spoke to her. *Id.* at 194, 37 S.E.2d at 539–40.

The *Croft* court discussed whether any evidence existed from which the jury could reasonably find the victim experienced conscious pain and suffering. *Id.* at 193–95, 37 S.E.2d at 539–40. The court concluded the "factual showing thereabout was weak but there was more than a scintilla of evidence tending to prove the point. The circumstances of the wreck and the fact that [the] intestate survived the finally fatal injuries for about twenty-nine hours, with some movement abed, point to the fact of suffering." *Id.* at 193–94, 37 S.E.2d at 539.

Here, in support of its argument that Brittany suffered no conscious pain, Department points to the testimony of Britta-

ny's father who stated his daughter was unconscious when he found her and never regained consciousness. However, Brittany's father also testified that when he first arrived on the scene of the accident, his daughter was gasping for air and moaning somewhat. In the days at the hospital before her death, Brittany's father apparently spoke to his daughter to let her know everything would be all right. He testified:

> And, during those three days I felt like she did hear me. Whether she, she couldn't talk back to me or anything but I felt like she heard me because she did have movement, she had movement with her fingers. And her eyes were blank, they were blank. So I felt like that she did hear me and she could hear me and I just tried to comfort her as much as I could.

Clearly, the testimony of Brittany's father regarding Brittany's pain and suffering was somewhat contradictory. Therefore, the issue was a question of fact properly left for the jury. *See Vereen v. Liberty Life Ins. Co.*, 306 S.C. 423, 432, 412 S.E.2d 425, 431 (Ct.App.1991) ("If there is any evidence from which a jury could reasonably conclude a decedent experienced conscious pain and suffering, the issue must be submitted to the jury."). We conclude the trial court committed no error in denying Department's motions for a reduction in the verdict or for JNOV.

## II. New Trial Absolute or JNOV (Survival Action)

■ Department further argues it was entitled to a new trial absolute or JNOV because the jury verdict of $310,000 awarded for the survival cause of action was excessive, shocking to the conscience, and could have only been the result of passion, prejudice, or caprice. We disagree.

■ A new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the "result of caprice, passion, prejudice, partiality, corruption, or other improper motives." *McCourt ex rel. McCourt v. Abernathy*, 318 S.C. 301, 308, 457 S.E.2d 603, 607 (1995). "The failure of the trial judge to grant a new trial absolute in this situation amounts to an abuse of discretion and on appeal

[an appellate court] will grant a new trial absolute." *O'Neal,* 314 S.C. at 527, 431 S.E.2d at 556.

As previously noted, evidence existed from which the jury could have determined the victim experienced conscious pain and suffering. One cannot easily or with any mathematical certainty place a value on the amount of a person's pain and suffering. We do not find the award of $310,000 to be shockingly excessive in this instance, and we defer to the jury's finding in this regard.

## III. Special Verdict Form

■■■ Department contends the trial court abused its discretion in failing to submit a special interrogatory to the jury which would allocate liability between Department and the pickup truck driver. Department argues such apportionment is mandated by S.C.Code Ann. § 15–78–100(c). We disagree.

Section 15–78–100(c) of the Tort Claims Act provides:

In all actions brought pursuant to this chapter when an alleged joint tortfeasor is named as party defendant in addition to the governmental entity, the trier of fact must return a special verdict specifying the proportion of monetary liability of each defendant *against whom liability is determined.*

S.C.Code Ann. § 15–78–100(c) (Supp.1999) (emphasis added). The trial court ruled that a special interrogatory was not necessary as Bussiere and his employer had settled with Smalls prior to trial. The court reasoned Department was the only remaining defendant before the jury in the case and so there was no need for the jury to apportion liability between multiple defendants. We agree with the trial court's determination that the requirement in § 15–78–100(c) for a special verdict form is not applicable in a case such as this where only one named defendant was before the jury. *See generally Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995) ("Where the terms of the statute are clear, the court must apply those terms according to their literal meaning.").

## IV. Entitlement to Set–Off

 Department alleges the trial court erred in failing to set off the $100,000 settlement paid by Bussiere and his employer. Department argues the judgments should be reduced by the settlement amounts: $90,000 for the wrongful death cause of action and $10,000 for the survival cause of action.

We recognize that because of the procedural posture of this case, Department is precluded from the normal statutory means of reducing its monetary damages. Although the Uniform Contribution Among Tortfeasors Act provides that a release, covenant not to sue or not to enforce judgment "reduces the claim against the others to the extent of any amount stipulated by the release or the covenant," the Act also provides that it is not applicable to governmental entities. S.C.Code Ann. §§ 15–38–50, –65 (Supp.1999). Moreover, the Tort Claims Act is the exclusive remedy "for any tort committed by an employee of a governmental entity while acting within the scope of his official duty." S.C.Code Ann § 15–38–65 (Supp.1999). As discussed above, however, § 15–78–100(c) is inapplicable in a case such as this and of no help in reducing Department's liability.

 The trial court's jurisdiction to set off one judgment against another is equitable in nature and should be exercised when necessary to provide justice between the parties. *Hawkins v. Pathology Assocs. of Greenville, P.A.,* 330 S.C. 92, 498 S.E.2d 395 (Ct.App.1998). A set-off is not necessarily founded upon "any statute or fixed rule of court, but grows out of the inherent equitable jurisdiction" of the court; therefore, such motions are "addressed to the discretion of the court—a discretion which [should not be] arbitrarily or capriciously exercised[.]" *Rookard v. Atlanta & Charlotte Air Line Ry.,* 89 S.C. 371, 376, 71 S.E. 992, 995 (1911). As the *Hawkins* court reasoned:

> A nonsettling defendant is entitled to credit for the amount paid by another defendant who settles. *Powers v. Temple,* 250 S.C. 149, 156 S.E.2d 759 (1967); *Vaughn v. City of Anderson,* 300 S.C. 55, 386 S.E.2d 297 (Ct.App.1989). The Supreme Court explained, "[t]he reason for allowing such a credit is to prevent an injured person from obtaining

a second recovery of that part of the amount of damages sustained which has already been paid him. Or differently stated, it is almost universally held that there can be only one satisfaction for an injury or wrong." *Truesdale v. South Carolina Highway Dept.*, 264 S.C. 221, 213 S.E.2d 740 (1975). However, the reduction in the judgment must be from a settlement for the same cause of action. *Ward v. Epting*, 290 S.C. 547, 351 S.E.2d 867 (Ct.App.1986) (refusing to apply settlement for pain and suffering cause of action to judgment in wrongful death action).

*Hawkins*, 330 S.C. at 113, 498 S.E.2d at 406–07.

As our supreme court has stated:

[T]he rule is almost universally followed that one tort feasor is entitled to credit for the amount paid by another tort feasor for a covenant not to sue. There is considerable conflict, however, as to the proper manner of allowing such credit, that is, whether the credit should be allowed by the jury in assessing the injured party's damages, or by the court. We are convinced from a study of these authorities that the sounder and preferable method . . . is for evidence thereabout to be excluded from the consideration of the jury, and for credit to be given by the court.

*Powers v. Temple*, 250 S.C. 149, 155, 156 S.E.2d 759, 761 (1967).

In *Wooten ex rel. Wooten v. South Carolina Department of Transportation*, 326 S.C. 516, 485 S.E.2d 119 (Ct.App.1997), *aff'd as modified*, 333 S.C. 464, 511 S.E.2d 355 (1999), the plaintiff in an action under the Tort Claims Act settled with two defendants prior to trial and dismissed one defendant during trial, leaving the Department of Transportation as the only remaining defendant. The trial court reduced the verdict by the settlement amounts with no appeal taken regarding the set-off. The concluding paragraph stated: "The trial judge correctly determined [the plaintiff] was entitled to the entire verdict, less amounts paid by the two [settling] co-defendants." *Id.* at 529, 485 S.E.2d at 126.

In our view, a set-off is warranted in this case. The jury's verdict represented the total amount of damages sustained by Brittany and her parents. Because Bussiere and his employer settled with the Smalls prior to trial, the jury only apportioned

negligence between Brittany and Department. Equity dictates Department be given a credit for the amount paid by the settling parties and thus, a double recovery is avoided. The settlement amount represents, in effect, the portion of total damages attributable to Bussiere. A set-off under the facts of this case is not only equitable but it comports with the legislative intent of limiting the liability of governmental entities. *See generally* S.C.Code Ann. § 15–78–20 (Supp.1999).

■ Having found Department entitled to a set-off, the question arises as to the method of effecting the credit. The parties have cited no South Carolina cases addressing this point and our own research reveals none. Since there is no South Carolina precedent, it is appropriate to look to other jurisdictions to determine if the issue has been presented and ruled upon. In *Rittenhouse v. Erhart*, 424 Mich. 166, 380 N.W.2d 440 (1986), the Supreme Court of Michigan considered this exact question when it heard three separate appeals dealing with the application of a set-off. The court concluded, after a very detailed analysis, that the trial judge should subtract any settlement amounts from the jury's verdict before applying the plaintiff's comparative fault to reduce the judgment.

The court reasoned that in these cases the jury's verdict represented the total amount of damages suffered by the plaintiff and that the comparative negligence percentages determined at trial applied only to the parties at trial, not the settling tortfeasors. The court explained:

[W]e hold that a plaintiff's percentage of fault in these trials was determined only in relation to the defendants participating at trial. Therefore, a plaintiff's comparative negligence should only be deducted from that part of the judgment to be paid by the defendant who was the only other party to a determination of fault. Prior to subtracting the plaintiff's comparative fault from this judgment, the settlement between the plaintiff and the nonparty tortfeasors should be subtracted. This settlement may, and presumably will, be based, among other things, on an estimate of the comparative fault of the parties to the settlement.

*Id.* at 446–47 (footnotes omitted).

The Michigan court's reasoning is persuasive, especially in light of the fact that the juries in *Rittenhouse*, as here, only

compared the negligence of the two parties at trial and did not compare the plaintiff's conduct against all possible tortfeasors. Applying that analysis, we find the jury verdict should be reduced by the amount of the settlement allocated to each cause of action and then further reduced by the comparative negligence of Brittany. Finally, the $250,000 cap under the Tort Claims Act in effect at the time of this action provides the final reduction.

| Wrongful Death | | Survival Action |
|---|---|---|
| $600,000 | Jury Verdict | $310,000 |
| (90,000) | (Credit for settling tort-feasor | (10,000) |
| $510,000 | Remaining damages due Plaintiff | $300,000 |
| (91,800) | (18% Reduction for comparative negligence of Plaintiff) | (54,000) |
| $418,200 | | $246,000 |
| (Cap applied) $250,000 | Cap of Tort Claims Act **Judgment Due** | (Did not exceed cap) $246,000 |

As can be seen above, the trial court's failure to provide a credit for the settlement has no effect on the amount due for the wrongful death action because even with the credit the verdict exceeds the cap under the Tort Claims Act. However, after giving Department credit for the amount of the settlement and applying the percentages of comparative negligence, we find the judgment in the survival action should be reduced to $246,000. Contrary to Department's argument, it is not entitled to a set-off from the amount of the cap because Smalls has not recovered all damages awarded by the jury and application of a set-off in this manner would unfairly deprive a plaintiff of the verdict. The jury found the total damages suffered by Smalls to be $600,000 and $310,000. The amount of the settlement obtained from Bussiere together with the amounts received from Department still does not rise to the

full level of damages awarded by the jury. Therefore, Smalls has not obtained a double recovery, and we see no equitable reason to apply the credit in the manner urged by Department. *See Truesdale v. South Carolina Highway Dep't,* 264 S.C. 221, 213 S.E.2d 740 (1975) (deducting the amount of settlement from the damages award before further reducing the award to the statutory cap), *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

## V. Exclusion of Evidence

Department argues the trial court abused its discretion in not allowing the testimony of trooper William Lynn and accident reconstructionist Ronald Kirk, as well as related evidence.

■ The admission or exclusion of 'evidence rests in the sound discretion of the trial judge whose decision will not be reversed on appeal absent an abuse of discretion. *Gamble v. International Paper Realty Corp. of S.C.,* 323 S.C. 367, 474 S.E.2d 438 (1996).

A. *Sketch.*

■ Department contends the court erred in excluding a sketch of the accident scene prepared by Trooper Lynn, the investigating officer. The sketch purported to show the location of accident debris. Asserting the sketch indicated debris was found outside Bussiere's lane of travel, Department argues a jury could conclude that Bussiere crossed the center line and struck the victim in the opposite lane of travel.

Trooper Lynn testified that because cars were traveling down the road and scattering the accident debris, he could not determine the exact point of impact. Trooper Lynn actually witnessed one car run over a piece of debris, kicking it over into the opposite lane. His proffered testimony revealed he returned to the scene at a later time and found additional debris in the driver's lane not marked on the sketch. The sketch, as proffered, shows only a few dots to indicate debris in one lane. The trial court ruled the sketch inadmissible.

It is clear from Trooper Lynn's testimony that cars driving over the debris scattered the debris across the road. Further, nothing in the evidence presented at trial indicated Bussiere had crossed the center line and struck the victim. The trial court specifically stated that use of the sketch in an attempt to prove Bussiere crossed the center line and struck the victim was purely speculative. We agree and find no abuse of discretion in the trial court's exclusion of the sketch.

### B. *Photograph.*

■■■ Department also asserts the trial court erred in not allowing a photograph of Bussiere's truck "for the purpose of showing that Bussiere could have easily avoided this accident by swerving a short distance to his right." Department contends the photograph showed Bussiere's truck struck the victim on the far left corner, but its conclusory argument does not indicate how the photograph would demonstrate Bussiere could have avoided the accident. Other testimony presented at trial described the damage to the truck as being on the front corner of the driver's side. We do not find the trial court abused its discretion in not allowing the photograph under these circumstances.

### C. *Ronald Kirk's Testimony.*

■■■ Department alleges the court erred in failing to allow Kirk, an accident reconstruction expert,

> to testify as to the distance Bussiere would have traveled from the time Brittany Smalls was last seen on the house side of the road to where the point of collision, how long it would have taken Bussiere to travel this distance and thus the minimal amount of time the deceased would have had to see Bussiere's vehicle and not enter upon the roadway and how long Bussiere would have to see the deceased, react to her [presence], and steer clear of the collision.

Essentially, the proffered testimony represented that Bussiere should have seen Brittany in the road sooner than he did and could have swerved to the right to avoid hitting her. On cross-examination, however, Kirk admitted that without knowing how fast Brittany was running, he could not state with any degree of scientific certainty how long Bussiere would have

had to react nor whether Bussiere had time to avoid hitting Brittany. Rather, Kirk estimated that Bussiere would have had time to stop if he had perceived Brittany as a potential hazard. The court found the testimony inadmissible for its stated purpose. The court noted that the uncontradicted evidence showed Bussiere was going 35 m.p.h., the view of the road was unobstructed, and that he saw her from a distance of ten to fifteen feet. We find no error in the exclusion of this testimony.

### VI. Videotape of the Accident Scene and Testimony of Gene Staulcup

■■■■ Department also argues the trial court erred in excluding a videotape of the accident scene taken by Gene Staulcup as well as his and Trooper Lynn's related testimony about the tape. Department alleges the tape would have shown that Brittany had a clear view of Bussiere's pickup truck, that the truck could not have been mistaken for a school bus, and the amount of time she would have had to view the truck and react to it. It further asserts "[a] viewing of the video tape by the jury was critical to the Defendant's comparative negligence defense" so that the jury could assess Brittany's relative negligence.

Staulcup recorded a videotape of a colleague driving a 1988 Dodge Ram pickup truck down the same road where the accident occurred. Staulcup recorded the truck traveling at about 35, 45, and 55 m.p.h. The tape was made early in the morning to approximate the time and light conditions on the date of the accident. However, the tape was made on October 2, 1997, some twenty months after the accident of January 25, 1996. Further, the truck driven by Bussiere was a white 1986 Isuzu pickup, not a Dodge Ram.

Although counsel for the Smalls stipulated to many of the conditions of the recreation, counsel argued that the video was not a true depiction of the area and asserted that additional street lights had been added since the accident occurred. Counsel further contended the negligence of Bussiere was not at issue as he had settled and was no longer a party to the action. On cross-examination, Staulcup admitted the colors in the videotape were not true to life. For example, the tail lights appeared white in the videotape although they were

really red. He also admitted that as the truck rounded a curve in the road, its headlights appeared to be one light, like a train, and a viewer could not tell the type of vehicle approaching. Staulcup acknowledged there was some difference between what one could see with the naked eye as opposed to what showed up in the video and there was no depth perception in the video. Upon further questioning, Staulcup conceded he did not know whether the headlights on the Dodge Ram were as wide as those on the Isuzu, whether there was any difference in the candlepower of the headlights on the two vehicles, and whether there were any differences in the height of the vehicles and the spacing of the headlights.

The trial court ruled the tape inadmissible, finding the quality of the videotape insufficient to show what the victim may have seen on the morning of the accident. The court specifically noted the colors were not accurate and observed that a question existed as to whether another street light had been placed at the scene. The atmospheric conditions, potentially differing candlepower of the Dodge and Isuzu, as well as the wattage of the bulbs also concerned the court. Based on these explanations, we hold the trial court did not abuse its discretion in excluding the video and related testimony.

## VII. Testimony Regarding Parker's Inability to Testify at Trial

 Department contends the trial court committed reversible error by refusing to allow the wife of Walter Parker, the school bus driver, to testify that her husband could not appear in person at the trial because of his medical condition. The trial court's refusal was based on its belief that her testimony would inappropriately give rise to a sympathy factor. Parker's deposition was admitted into evidence instead.

Rule 32(a)(3)(C), SCRCP, provides that a deposition may be used at trial in lieu of live testimony if the court finds "that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment[.]" In *Gamble v. Price*, 289 S.C. 538, 347 S.E.2d 131 (Ct.App.1986), the trial court judicially noticed that one party's medical expert was unable to attend due to infirmity. We held the trial court did not err, and relied on a former circuit court rule, now Rule 32(a)(3)(C), which provided a deposition may be used if the trial court

finds the witness unable to attend the trial because of infirmity. We found the trial court did not err in taking judicial notice of the witness's infirmity because it was collateral to the issue of liability and not a basis for the judgment. In the current appeal, the trial court permitted the deposition based on Parker's medical infirmity. Department cites no authority for the proposition that the court must allow a party to provide a witness to take the stand and explain the use of a deposition instead of live testimony. Accordingly, we find no error.

## VIII. Directed Verdict

 Department next alleges the trial judge erred in denying its motions for a directed verdict, new trial absolute, or JNOV "when the only evidence is that the deceased crossed the highway when Bussiere was in plain view and the deceased knew not to cross the highway when there was oncoming traffic." We disagree.

In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. This Court will reverse the trial court only when there is no evidence to support the ruling below. This Court will not disturb a trial court's decision granting or denying a new trial unless that decision is wholly unsupported by the evidence or the court's conclusions of law have been controlled by an error of law.

*Steinke v. South Carolina Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999) (internal citation omitted).

Although there is no testimony that Parker directly told Brittany to cross the road, at trial several students who rode the bus with Brittany testified that Parker instructed them to cross the street and be waiting for the bus when it arrived or be left behind. There was other testimony that Parker had, in fact, been known to leave children behind. Because the record reflects the existence of evidence to support the jury's decision, we affirm the denial of Department's motions.

## IX. Jury Instructions

Department submitted jury instructions that explained a negligent act could be so remote in time as not to be a proximate cause of the resulting injury and that Bussiere had a duty not only to observe what an ordinarily prudent person would see, but to drive at a proper speed and with proper lights when children were present in order to avoid a collision. Department contends the trial court committed reversible error by failing to charge the requested instructions.

In reviewing allegations of error, a jury charge must be construed as a whole and there is no reversible error if " '[w]hen the charge is read as a whole, it contains the correct definition and adequately covers the law.' " *Keaton ex rel. Foster v. Greenville Hosp. Sys.*, 334 S.C. 488, 496, 514 S.E.2d 570, 574 (1999) (quoting *State v. Johnson*, 315 S.C. 485, 487, n. 1, 445 S.E.2d 637, 638 n. 1 (1994)).

Here, we find no error. The charges sought by Department were essentially covered in the trial court's charge regarding proximate cause. The court correctly and fully charged the jury on the relevant negligence concepts applicable in this instance, and the failure to give the requested charges does not constitute reversible error.

For the foregoing reasons, the decision of the trial court is **AFFIRMED AS MODIFIED.**

CONNOR and ANDERSON, JJ., concur.