**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1033**

---

W. S.,

Plaintiff – Appellant,

v.

CASSANDRA DANIELS; URSULA BEST; SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES,

Defendants – Appellees.

---

**No. 23-1038**

---

W. S.,

Plaintiff – Appellant,

v.

CASSANDRA DANIELS; URSULA BEST; SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES,

Defendants – Appellees,

and

BOYS HOME OF THE SOUTH INC; VERNON HAYES; KATHY COOK, Ph.D.; PETER HARRIS; NICOLE WHITE; NICOLE LINDSEY; CYNTHIA BROCK; RICHELLE OWENS; JOEL STOUDENMIRE; BRYSON THOMASON; F. JORDAN EARLE; DR CLARK JERNIGAN; JON MCCLURE; CLIFF BROWN;

DR BETTY MCCONAGHY; GRANT BURNS; MALINDA L. ROBINSON; DON KISER; STEVE ROACH; ELLIOT BOTZIA; KATHERINE SYMONETTE,

Defendants.

---

Appeals from the United States District Court for the District of South Carolina, at Anderson.  Donald C. Coggins Jr., District Judge.  (8:16-cv-01280-DCC; 8:16-cv-01032-DCC)

---

Argued:  September 24, 2024                          Decided:  August 7, 2025

---

Before KING and RICHARDSON, Circuit Judges, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

---

Affirmed by unpublished opinion.  Judge King wrote the opinion, in which Judge Richardson and Judge Osteen joined.

---

**ARGUED:**  Heather Hite Stone, HITE & STONE, Abbeville, South Carolina, for Appellant.  Andrew Lindemann, LINDEMANN LAW FIRM, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:**  Robert J. Butcher, FOSTER CARE ABUSE LAW FIRM, PA, Camden, South Carolina; Thomas E. Hite, III, Thomas E. Hite, Jr., HITE & STONE, Abbeville, South Carolina, for Appellant.  James W. Logan, Jr., LOGAN & JOLLY, LLP, Anderson, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

When this matter was previously before us on the parties' cross-appeals, we remanded for further proceedings with respect to a single issue: Whether the defendant South Carolina Department of Social Services ("SCDSS") is entitled to a setoff with respect to the jury's compensatory damages award to plaintiff W.S. on his successful state law claims against SCDSS. *See W.S. v. Daniels*, No. 19-2348 (4th Cir. Mar. 3, 2022), ECF No. 62 (the "Remand Opinion"). In the decision reviewed in those cross-appeals, the district court had ruled that SCDSS is entitled to a setoff reducing W.S.'s award from $400,000 to $0. *See W.S. v. Daniels*, No. 8:16-cv-01032 (D.S.C. Oct. 24, 2019), ECF No. 283 (the "Original Setoff Order"). On remand, the district court adhered to the ruling in its Original Setoff Order. *See W.S. v. Daniels*, No. 8:16-cv-01032 (D.S.C. Dec. 13, 2022), ECF No. 325 (the "New Setoff Order"). W.S. now appeals from the New Setoff Order, which we are constrained to affirm.

I.

A.

1.

As we summarized at the outset of our Remand Opinion of March 2022, *see* Remand Opinion 4-5, the prior cross-appeals followed a March 2019 jury trial in the District of South Carolina on plaintiff W.S.'s claims against defendants SCDSS and its employees Cassandra Daniels and Ursula Best (collectively, the "SCDSS defendants"). W.S.'s claims — of gross negligence (under state law) against SCDSS and substantive due process

3

violations (under 42 U.S.C. § 1983) against Daniels and Best — are predicated on four incidents of sexual abuse that W.S. allegedly suffered as a minor over a nearly three-year period while in the custody of SCDSS at the Boys Home of the South ("BHOTS"). Prior to the trial, the district court denied W.S.'s requests for further discovery and for leave to file an amended complaint alleging 17 additional incidents of sexual abuse. By that time, W.S. had agreed to settle his claims against various other defendants, including BHOTS and individuals related thereto (collectively, the "BHOTS defendants"), for the sum of $825,000.

At the conclusion of the five-day trial, the jury found three of the four alleged incidents of sexual abuse and awarded W.S. $400,000 in compensatory damages on the state law claims against SCDSS. The jury also awarded W.S. $67,000 in compensatory damages plus $67,000 in punitive damages on the § 1983 claims against Daniels and Best. In the post-trial proceedings, invoking South Carolina's setoff rule, the SCDSS defendants sought to reduce the jury's damages awards by the full amount of W.S.'s $825,000 pretrial settlement with the BHOTS defendants. By its Original Setoff Order of October 2019, the court denied Daniels and Best a setoff with respect to the $134,000 award on the § 1983 claims, but the court granted SCDSS a setoff that reduced the award on the state law claims from $400,000 to $0.

In the cross-appeals from the final judgment, W.S.'s contentions included that the district court abused its discretion in its pretrial rulings denying further discovery and leave to amend the complaint, and that the court wrongly granted SCDSS the setoff that eliminated the jury's damages award on the state law claims. For their part, the SCDSS

4

defendants asserted, inter alia, that the court erred by denying Daniels and Best a setoff with respect to the damages award on those claims.

Immediately following the foregoing summary, we announced in the Remand Opinion that we were affirming the district court's judgment as to all challenged rulings except the Original Setoff Order's grant of the setoff to SCDSS. *See* Remand Opinion 5. We further articulated that — for reasons that would be explained in the balance of the Remand Opinion — we were vacating the judgment as to the SCDSS setoff ruling and remanding for further proceedings. *Id.*

2.

The Remand Opinion's ensuing discussion of the Original Setoff Order's grant of the setoff to SCDSS began by identifying relevant principles of South Carolina law. We recited that

> "South Carolina's setoff rule rests on the 'almost universally held [principle] that there can be only one satisfaction for an injury or wrong.'" *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 596 (4th Cir. 1996) (alteration in original) (quoting *Truesdale v. S.C. Highway Dep't,* 213 S.E.2d 740, 746 (S.C. 1975)). Under the setoff rule, "[a] non-settling defendant is entitled to credit for the amount paid by another defendant who settles for the same cause of action." *See Rutland v. S.C. Dep't of Transp.,* 734 S.E.2d 142, 145 (S.C. 2012). As such, "before entering judgment on a jury verdict, the [trial] court must reduce the amount of the verdict to account for any funds previously paid by a settling defendant, so long as the settlement funds were paid to compensate the same plaintiff on a claim for the same injury." *See Smith v. Widener,* 724 S.E.2d 188, 190 (S.C. Ct. App. 2012).

*See* Remand Opinion 6 (alterations in original). We further observed that, in cases involving governmental entities such as SCDSS, "a 'trial court's jurisdiction to set off one judgment against another is equitable in nature and should be exercised when necessary to

5

provide justice between the parties.'" *Id.* at 6 n.1 (quoting *Smalls v. S.C. Dep't of Educ.*, 528 S.E.2d 682, 688 (S.C. Ct. App. 2000)).

The Remand Opinion then focused on the *Smith v. Widener* decision, deeming it to be of especial significance. Specifically, we recognized that

> the *Smith* decision explains that there is a clear right to a setoff "when a prior settlement involves compensation for the same injury for which the jury awarded damages," and there is no right to a setoff "when the prior settlement involves compensation for a different injury from the one tried to verdict." *See* 724 S.E.2d at 191. But what if "a settlement is argued to involve two claims, one of which involves the same injury as the claim tried to verdict and one of which does not"? *See id.* In such a situation, *Smith* requires the trial court to "make the factual determination of how to allocate the settlement between the two claims." *See id.*; *accord Jolly v. Gen. Elec. Co.*, 869 S.E.2d 819 (S.C. Ct. App. 2021).

*See* Remand Opinion 7 (cleaned up). We refer herein to the foregoing allocation requirement as the "*Smith* allocation principle."

Next, the Remand Opinion provided a description of the settlement agreement between W.S. and the BHOTS defendants, as follows:

> The settlement agreement between W.S. and the BHOTS defendants, which was executed in February 2017, releases the BHOTS defendants from claims beyond those predicated on the four alleged incidents of sexual abuse presented at the March 2019 trial. Indeed, the agreement specifies that the "release includes, but is not limited to, all claims that were asserted, could have been asserted, or should have been asserted against the [BHOTS defendants] in the [District of South Carolina action]." *See* J.A. 2379 (sealed). The agreement provides for the payment to W.S. of "the total sum

of Eight Hundred Twenty-five Thousand Dollars ($825,000.00),” without assigning any particular amount to any particular claim. *Id.*

*See* Remand Opinion 7-8 (alterations in original).[*]

From there, the Remand Opinion recounted that — among a variety of grounds that W.S. had advanced in the district court in opposition to SCDSS’s setoff request — was the theory that the court should wholly deny a setoff or at least conduct a *Smith*-type allocation analysis because “his settlement with the BHOTS defendants ‘covers many more harms than the jury verdict addresses,’” including “the 17 additional incidents of sexual abuse that he unsuccessfully sought to assert in an amended complaint.” *See* Remand Opinion 8 (quoting J.A. 2138-39). We elaborated:

> Because “the BHOTS settlement [is] much broader in scope than the narrow issues that were presented to the jury,” W.S. urged the district court to deny a setoff altogether. *See* J.A. 2137. He characterized SCDSS’s setoff request as “asking the Court to compare apples and oranges,” in that “the settlement with [the BHOTS defendants] is an apple while the verdict with [SCDSS] is an orange.” *Id.* at 2138-39.
>
> In the alternative, W.S. argued that the district court should limit any setoff by giving SCDSS credit for only the portion of the $825,000 settlement attributable to the claims that the jury resolved in his favor. That is, albeit without explicitly invoking the *Smith* decision, W.S. contended that the court should “make the factual determination of how to allocate the settlement between [those claims and all other claims released].” *See Smith*, 724 S.E.2d at 191. As W.S. put it, the court should “make an equitable determination as to what damages should be assigned to BHOTS for the harms in the claims in this matter and each additional harm suffered by W.S. that was not addressed in this lawsuit.” *See* J.A. 2140. In conjunction with that argument, W.S. pointed to specific evidence that the court could consider “to apportion and assign damages.” *Id.*

---

[*] Citations herein to “J.A. __” refer to the contents of the Joint Appendix filed by the parties in the prior cross-appeals.

7

*See* Remand Opinion 8-9 (alterations in original).  As the Remand Opinion noted, SCDSS's subsequent reply to W.S.'s opposition to its setoff request "did not address the foregoing argument made by W.S. concerning allocation." *Id.* at 9.

Addressing the district court's Original Setoff Order, the Remand Opinion recounted that the district court "acknowledged that the settlement agreement with the BHOTS defendants encompasses the entire period of nearly three years that W.S. was in SCDSS's custody at BHOTS and that the agreement's language is 'very broad.'" *See* Remand Opinion 9 (quoting Original Setoff Order 7).  "Nevertheless," we observed, the Original Setoff Order "contained no mention of W.S.'s arguments that the district court should therefore wholly deny a setoff or at least give SCDSS credit for only the portion of the $825,000 settlement attributable to the claims that the jury resolved in his favor." *Id.* Nor did the Original Setoff Order acknowledge the *Smith* allocation principle.  *Id.* at 9-10. Instead, "the district court summarily ruled that because the three sexual abuse incidents found by the jury fell with 'the same time period covered by the BHOTS settlement,' SCDSS is entitled to credit for the settlement's full amount." *Id.* at 10 (quoting Original Setoff Order 7-8).

### 3.

Finally, upon de novo review of the relevant principles of South Carolina law, we concluded in the Remand Opinion that the district court erred by disregarding the *Smith* allocation principle.  *See* Remand Opinion 11; *see also id.* at 6 (explaining that the Original Setoff Order "presents a question of South Carolina law," i.e., the potential applicability of the *Smith* allocation principle, "that we review de novo" (citing *Ward v. Allied Van Lines,*

8

*Inc.*, 231 F.3d 135, 138 (4th Cir. 2000))).  In so concluding, we emphasized that SCDSS did "not dispute" the existence of the *Smith* allocation principle. *Id.* at 11.  But SCDSS did introduce a theory on appeal, "not raised below, that — notwithstanding the settlement agreement's broad language releasing the BHOTS defendants from 'all claims that were asserted, could have been asserted, or should have been asserted against [them] in the [District of South Carolina action],' — the agreement is actually limited to solely the claims asserted." *Id.* at 10 (alterations in original) (quoting J.A. 2379).  In other words, SCDSS asserted that the agreement released the BHOTS defendants solely from the same claims that went to trial against the SCDSS defendants.  Under that theory, which we now call the "narrow release theory," the *Smith* allocation principle is therefore inapplicable.

The narrow release theory having been raised for the first time on appeal, the Remand Opinion did not address or decide the merits of it.  Rather, we vacated the judgment as to the SCDSS setoff ruling and remanded for further proceedings, "express[ing] no opinion on how the setoff issue should be decided and leaving it to the district court to consider the parties' related arguments in the first instance." *See* Remand Opinion 11.

### B.

On remand, the parties briefed their respective positions and the district court conducted a non-evidentiary hearing in November 2022.  SCDSS's primary position was a previously unasserted theory that we refer to as the "collective injury theory."  The premise of that theory is that the jury's compensatory damages award against SCDSS was for a single injury — a collective injury — resulting from all sexual abuse suffered by W.S.

9

during his nearly three years at BHOTS, and not from just the three incidents of sexual abuse found by the jury. In support of the collective injury theory, SCDSS asserted that W.S.'s trial counsel made no effort to identify a discrete injury resulting from any particular incident, nor did the jury instructions or verdict form direct the jury to limit damages to the specific incidents it found. Instead, counsel sought — and the jury apparently awarded — damages for the collective injury premised on, e.g., W.S.'s detailed testimony regarding more than 100 incidents of sexual abuse perpetrated by at least 12 other BHOTS residents starting soon after his arrival at BHOTS, a direct plea from W.S. to the jury for money damages to correct that injustice, and the testimony of W.S.'s damages expert that W.S. was afflicted with post-traumatic stress disorder that would require lifelong treatment as a result of the repeated abuse he suffered. Pursuant to the collective injury theory, because the BHOTS settlement could not have compensated W.S. for more than the collective injury compensated by the jury's damages award, the *Smith* allocation principle is inapplicable.

Alternatively, SCDSS reiterated the narrow release theory that it had first raised in the prior cross-appeals, i.e., that W.S.'s settlement agreement with the BHOTS defendants released them solely from the same claims that went to trial against the SCDSS defendants. As articulated by SCDSS, the narrow release theory rests on the proposition that the broad release language quoted in our Court's Remand Opinion was narrowed by other language in the settlement agreement's recitals stating, inter alia, that W.S. "agreed to resolve the claims asserted against the BHOTS Defendants in this Lawsuit pursuant to the terms and

10

conditions set forth below." *See* J.A. 2378. Similar to the collective injury theory, the narrow release theory thereby renders the *Smith* allocation principle irrelevant.

For his part, W.S. retreated from his prior assertion that the trial evidence is sufficient for a *Smith*-type allocation analysis and conceded that such an assessment would actually be impossible. W.S. argued, however, that the burden was on SCDSS to develop the relevant evidence and thus SCDSS should not be awarded any setoff. Otherwise, in response to SCDSS's collective injury theory, W.S. disputed that his counsel's presentation of the damages evidence and the jury instructions and verdict form established that the jury's damages award was for a collective injury resulting from all sexual abuse suffered by W.S. during his nearly three years at BHOTS. And in response to SCDSS's narrow release theory, W.S. contended that such theory lacks merit under contract law and in any event is foreclosed by our Court's Remand Decision, in that our discussion of the settlement agreement's broad release language established the law of the case.

C.

By its New Setoff Order of December 2022, the district court concluded that the *Smith* allocation principle is inapplicable for two reasons. First, the court adopted SCDSS's collective injury theory, explaining:

> As discussed at length by both parties at the hearing, the types of injuries sustained by [W.S.] during his time at BHOTS are cumulative and cannot be easily reduced to a simple mathematical equation. Due to the nature of this collective harm, there is an insufficient factual basis for this Court to make a judgment as to any monetary allocation as to each of the three occurrences found by the jury at trial with respect to SCDSS.

11

*See* New Setoff Order 3-4.  In that regard, the New Setoff Order highlighted that "just as he failed to make any allocation of claims or damages in [his settlement agreement with the BHOTS defendants, W.S.] failed to make any distinct identification of specific injuries per occurrence at trial."  *Id.* at 4 n.3.

Second, the New Setoff Order adopted SCDSS's narrow release theory, agreeing that the broad release language quoted in our Court's Remand Opinion was narrowed by the statement in the settlement agreement's recitals that W.S. "agreed to resolve the claims asserted against the BHOTS Defendants in this Lawsuit pursuant to the terms and conditions set forth below."  *See* New Setoff Order 4 (citing J.A. 2378).  Deeming the recitals statement to be specific and the release language to be "more general," the New Setoff Order explained that "it is well settled that 'when there is a conflict between general and specific provisions of a contract, the specific clause controls its meaning.'"  *Id.* (quoting *Seery v. DePuy Orthopaedics, Inc.*, No. 2:14-cv-04262, 2014 WL 12609706, at *2 (D.S.C. Dec. 31, 2014)).

The New Setoff Order rejected W.S.'s contention that the discussion of the broad release language in our Court's Remand Opinion established the law of the case and thereby foreclosed the district court's adoption of the narrow release theory.  *See* New Setoff Order 5 n.4.  Specifically, the New Setoff Order rejected W.S.'s law-of-the-case contention because the Remand Opinion "'express[ed] no opinion on how the setoff issue should be decided' and left it to this Court to decide 'in the first instance.'"  *Id.* (alteration in original) (quoting Remand Opinion 11).

12

Consequently, the district court adhered in its New Setoff Order to the ruling in its Original Setoff Order that SCDSS is entitled to a setoff reducing W.S.'s award from $400,000 to $0. *See* New Setoff Order 5. W.S. timely noted this appeal from the New Setoff Order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

On appeal, the parties reiterate the arguments they presented to the district court in the remand proceedings. Moreover, W.S. interprets the New Setoff Order to conclude that a *Smith*-type allocation analysis is impossible, rather than to adopt SCDSS's collective injury theory and thus rule that the *Smith* allocation principle is inapplicable. Based on that reading of the New Setoff Order, W.S. asserts that the district court erred by failing to place the burden on SCDSS to develop the evidence necessary for an allocation analysis and thus by awarding SCDSS any setoff at all.

We disagree with W.S.'s interpretation of the New Setoff Order and conclude, as heretofore stated, that the district court adopted the collective injury theory and thus ruled that the *Smith* allocation principle is inapplicable. As such, the question before us with respect to that aspect of the New Setoff Order is whether the district court erred in adopting the collective injury theory, i.e., whether the court erred in finding that the jury's compensatory damages award against SCDSS was for a collective injury resulting from all sexual abuse suffered by W.S. during his nearly three years at BHOTS. That is an issue we review for clear error. *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 596 (4th Cir. 1996) (explaining that "a district court's decision to set off a

13

damage award is reviewed for clear error" and that "[w]e find clear error only if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed") (internal quotation marks omitted)).

Having carefully reviewed the trial record, we ascertain no clear error in the district court's adoption of the collective injury theory. We therefore affirm the New Setoff Order on that basis, without unnecessarily reaching and deciding whether the court erred in adopting SCDSS's narrow release theory or in rejecting W.S.'s contention that the narrow release theory is foreclosed by our Remand Opinion.

III.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED*

14